Lawrence Yerger *v.* State of Mississippi ex rel. James Brown.

[45 South., 849.]

1. Quo Warranto. *Exercise of office. Code* 1906, § 4017. *Code* 1906, § 3598.

     A person unlawfully acting as clerk of the board of trustees of the penitentiary exercises the functions of a public officer, and may be proceeded against under Code 1906, § 4017, authorizing a *quo warranto* whenever any person "unlawfully holds or exercises the functions of any public office," although Code 1906, § 3598, creating the office, is preceded by a head line entitled, "Employes of the Penitentiary."

2. Clerk of Board Penitentiary Trustees. *Election. Tenure. Term of Office. Code* 1906, § 3598. *Officers. Removals from office, Code* 1906, § 3619.

     Under Code 1906, § 3598, providing that the clerk of the board of trustees of the penitentiary shall be elected by the board and hold office for one year:—

     (*a*) The term of a person elected to the office, in the absence of other statutory provisions on the subject, begins from the date of his election and ends one year thereafter; and

     (*b*) When the term of the clerk will expire before the trustees

go out of office the board has the right to elect his successor without waiting for the actual expiration of his term; and

(c) When his term has expired the board may elect his successor, although the trustees are themselves shortly to be succeeded by new members of the board; and

(d) An incoming board cannot discharge its clerk on the ground that the public service would be promoted by the removal of its agents and employes elected by the outgoing board, although it has power under Code 1906, § 3619, to investigate charges of misconduct of officers and employes and suspend them for misconduct.

3. STATUTES. *Construction. Intention.*

Where the language of a statute is plain and unambiguous the courts cannot hold that the legislature meant something different from the true meaning of the terms used.     .

FROM the circuit court of, first district, Hinds county.

HON. WILEY H. POTTER, Judge.

The state of Mississippi by its attorney-general, on the relation of James . Brown, appellee, was plaintiff in the court below; Yerger, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court.

The proceeding was by *quo warranto* to determine the right of Yerger to the office of clerk of the board of trustees of the state penitentiary. The defendant demurred to the information, but the demurrer was overruled. Defendant declined to plead further and final judgment went against him. The opinion of the court further states the case.

*Alexander & Alexander,* and *McClurg, Gardner & Whittington,* for appellant.

It cannot be denied that Code 1906, § 3598, prescribes that the term of office of all employes of the penitentiary shall be for one year, but it is equally clear that it does not provide when the trustees shall elect employes. The duration of the term is given by the code section, but not the beginning of the term. This is not a legislative blunder, nor is it a *casus omis-*

*sus.* It is quite customary for constitutions and statutes to fix the durations of terms, and at the same time leave to the legislature or to subordinate bodies with legislative powers the matter of determining when and how elections shall be held and when terms of office shall begin. The confusion which has arisen in this case is the result of confusing the words, " term of office " with the incumbency or tenure of the particular officer. The term of office is one thing; the duration of the incumbency of the officer is another. This is made plain by looking at the analogy between the power which the legislature has under the Constitution as to terms of office, and the powers which the board of trustees have under the legislature. Nothing can be more definite than the provisions of the state Constitution that the terms of offices shall be for some specified period. State Const., sec. 20. But it must be noted that the terms of all offices, and not the terms of all officers, shall be for some specified period.

Even where the Constitution and statutes fix the beginning of terms of offices, it is usually done so by fixing a certain day of the week, as the first Tuesday after the first Monday of a certain month. It will thus be seen that the beginning of the term is not fixed on a certain day of the month, and it results from this that no term, even for a constitutional officer which is required to be for a definite time, is ever for exactly four years. For instance, the first Tuesday after the first Monday of January may come on the 9th day or on the 16th day of January. The distinction between the words " term of office " and " time of incumbency " is pointed out in *Jameson* v. *Hudson,* 82 Va., 282. Now, just as the constitutional provisions - as to fixed terms did not necessarily fix the day on which the term should begin, so the code chapter on the Penitentiary, while prescribing the duration of the term, did not provide when the term of employes should begin or when their election should be held.

If, then, the beginning of the term was not fixed, how was

it to be fixed? We answer that it was committed to the trustees under Code 1906, § 3593, wherein they are given power "to adopt rules and regulations for the direction and the government of the penitentiary and the officers thereof."

The board of trustees are the successors of the former board of control of the penitentiary; and, as such, have entire management of the penitentiary except where otherwise clearly provided. The language in the code prescribing their powers is the broadest that could be used. They have the right to adopt rules and regulations for the government of the penitentiary and of the officers thereof. Then, it must follow that it was perfectly competent for the trustees to pass a by-law providing when the terms of employment of the employes chosen by them should begin.

It was the obvious purpose of the state legislature that the board of trustees of the penitentiary, who are held responsible for the management, should choose the subordinate employes who were to serve under them. The control of the penitentiary comprises a vast business. The intention, shown in whole chapter of the code in regard to the penitentiary, is that the incoming board should select its own employes. There is no difference between the case at bar and the case of *Olt* v. *Lowrey,* 78 Miss., 487; 29 South., 520.

We deny that it was within the power of the board of trustees to hold an adjourned meeting on December 31, 1907, and elect the employes for another year. No provision exists for such adjourned meeting. Even our county boards of supervisors had no right to hold adjourned meetings until the same was especially granted by legislative act. The powers of the board of trustees are limited by Code 1906, § 3590, reciting that they shall meet on the first Tuesday of each month, and continue in session as long as the business demands.

Again, the election in this case was held, not on January 1, 1908, but on the day preceding, that is, the day before the vacancy occurred. If the former board could anticipate the

vacancy by one day, they could have done it by one or two or ten months. If they could anticipate it at all, and thus take away from the incoming board the selection of officers for the year's term, why could not the former board, if candidates for re-election before the people, elect officers for the ensuing year, by way of anticipation, before the November popular election? The contention that the old employes could not hold over, and therefore there was a vacancy in office which had to be provided against, is untenable. If the employes be deemed officers, they would, under the code provision, hold over until their successors should qualify. If they were mere employes, then of course, they or others could be chosen for the interval. It has come to be a general rule that unless there is a provision to the contrary the incumbent of the office holds until his successor is chosen and qualified. And, as stated by Mechem on Public officers, § 397, the rule seems to be demanded by the most obvious requirements of public policy.

The removal was fully authorized. The contention that Code 1906, § 3619, permits removal only after conviction of misconduct before a court of inquiry is not borne out either by the letter or by the spirit of the code section. Surely it will not be contended that misconduct is the only ground for discharging an employe. Incompetency is not misconduct. Cannot an employe be discharged for incompetency? Blindness is not misconduct. Could not a prison guard be discharged if he became blind? Paralysis is not misconduct, but an employe can be discharged because of such infirmity. Removal is not misconduct, but if a sergeant of the penitentiary removes from certain limits he can be discharged. The construction of Code 1906, § 3619, contended for by the relator, is entirely too technical and restricted.

We deny that *quo warranto* lies in behalf of Brown. He is not such an officer as comes within the meaning of Code 1906, § 4017. Moreover, Code 1906, §§ 3598, 3599, distinctly refer to the clerk and secretary of the penitentiary board and

to the other subordinates as " employes." If the relator as secretary and clerk of the board is an " officer " under Code 1906, § 3598, then the guards and turnkeys, appointed under Code 1906, § 3599, are also " officers." If Brown, the relator, can maintain this action, then a guard of a convict squad, made unnecessary because of decrease in numbers of the convicts by death or discharge or pardon, could yet demand his right to serve his year out, and, if denied, could nevertheless claim his salary.

In determining whether Brown is an officer entitled to *quo warranto,* or a mere employe, we must look to the class in which he is placed. He is classed with all the subordinate employes of the penitentiary provided for in Code 1906, §§ 3598, 3599; is given no longer term nor greater right to his salary; and is entitled to no greater rights or remedies than any other employes provided in such code sections. It is elementary law that only officers proper are entitled to *quo warranto.*

*Williamson, Wells & Peyton,* for appellee.

The relator, Brown, was elected unanimously by the board of trustees of the penitentiary, and took charge of the office of clerk of the board for the regular term. Code 1906, §§ 3590, 3598. At the expiration of such term he was regularly elected for another term by the board, his election being December 31, 1907, for the term of one year to begin January 1, 1908. It is not denied that he at once qualified as required by law, and that subsequent to this election last mentioned the board of trustees held another regular meeting, and, in fact, held office until January 20, 1908.

Code 1906, § 3598, declares the position of the clerk and secretary of the board of trustees of the penitentiary to be an office, his term to be one year. No provision is made for the occupant to hold over until the appointment or election and qualification of a successor. At the end of the year for which

the clerk and secretary and the other employes of the peniten-
tiary are elected, the offices are vacant.    The board of trustees
which is always in existence, without reference to the in-
dividuals who may compose it, must, under the statute, fill the
vacancies at the very time they occur, so that the affairs of
the penitentiary shall not be neglected even for one day.    But
for the election of the clerk and other employes, on December
31, 1907, to take charge on January 1, 1908, the several offices
must have remained vacant for three weeks until the members
of the board, elected in the previous November, had qualified
and filled the vacancies.    The board itself is, however, con-
tinuously in existence.    Although the members of the board
change, yet, during every moment since January 1, 1907, there
has been a board of trustees in existence, and this board will
continue to exist until the law which organized it is repealed.
The duties imposed upon the board of trustees must be per-
formed at the time required by law, regardless of what par-
ticular individuals compose the board.

It was not only the right, but also the legal duty, of the
board of trustees to fill the vacancy in the office of clerk and
secretary which inevitably would occur on January 1, 1908.
Learned counsel for appellant are incorrect in contending that
no vacancy in the office occurred on December 31, 1907.   But
under Code 1906, § 3598, it is evident the relator's term com-
menced from the date of his appointment and ended at the
expiration of one year from such date.    The law does not
require the employes of the penitentiary to be elected at a
regular meeting.    In fact, the law authorizes and requires the
board to meet and be in session at all times when any business
necessitates a meeting.

The old board continued in office, not only after the time
when the relator's term expired, but for several days thereafter,
so that at the time the relator was again elected it was still
the legal board of trustees, and had no legal obligation upon
it to wait until the relator's term had actually expired before

it re-elected him.   23 Am. & Eng. Ency. Law (2d ed.), 347.
The case of *Ott* v. *Lowrey,* 78 Miss., 487; s.c., 29 South., 520,
cited, upon this point, by counsel for appellant, is not applica-
ble to a state of facts such as shown here.   The court was there
construing the code chapter on municipalities, and held that the
incoming municipal board, rather than the old board, had the
right to elect a tax assessor, clerk and other municipal officers.
The court, in that case, very properly held that the code chapter
provided for the election of tax assessor and clerk, and showed
clearly the intention of the legislature that the new and incom-
ing board should elect these officers.

Under Code 1906, § 3598, the term of the employes of the
penitentiary is for a fixed time, and they do not hold at the
pleasure of the board of trustees of the penitentiary.   The
power to suspend or discharge from office is not incident to the
power of appointment, and most certainly not where there is
a statutory provision specially providing how officers of the
penitentiary may be discharged for cause.   Code 1906, § 3619.
See also 19 Am. & Eng. Ency. Law (2d ed.), 562; *People*
v. *Board Fire Commissioners,* 72 N. Y., 445; *People* v. *Grant,*
12 Daly (N. Y.), 294; *People* v. *Jewett,* 6 Cal., 291; *Hall-
green* v. *Campbell,* 82 Mich., 255; *State* v. *Keuhn,* 34 Wis.,
229.

*Mayes & Longstreet,* on the same side.

If a statute or constitutional provision fixing or limiting
the duration of an official term is ambiguous, that interpretation
should be followed which limits the term to the shortest time.
*People* v. *Brenham,* 3 Cal., 477.   For the meaning of a judicial
term of office, see *Wright* v. *Adams,* 45 Tex., 134; *People* v.
*Palmer,* 154 N. Y., 133.

When the law which creates an office fixes the duration of
the term of the first incumbent thereof, it will be presumed
to be the intention of the lawmaking power that the period so
fixed shall be the term of office generally.   *State* v. *Pearsey,*

44 Mo., 159; *People* v. *Cotton,* 6 Cal., 84; *Hale* v. *Bischoff,* 53 Kas., 301; *State* v. *Stone,* 99 Mo., 361; *Hoke* v. *Richey,* 100 Ky., 66.

Generally, where a statute provides that an officer shall be appointed annually, the appointment made in pursuance thereof will entitle the appointee to hold for one year. *Buffalo* v. *Mackey,* 15 Hun (N. Y.), 204.

All offices, the tenure of which is not fixed by constitutional or statutory provisions, are held at will and discretion of some department of the government, usually the appointing power, and the incumbents are subject to removal at pleasure, unless a different tenure is expressed in the appointment, or is implied by the nature of the office, or results from an ancient usage. See 23 Am. & Eng. Ency. Law (2d ed.), 410, notes.

When the date upon which a term of office shall commence is fixed by Constitution or statute, the term of a person elected thereto will commence on that day, although he does not take possession of the office until a time subsequent thereto. *State* v. *Williams,* 49 Miss., 640; *Vogue* v. *State,* 107 Ind., 374.

When no time is fixed for the commencement of an official term, it begins to run from the date of the election or appointment, or from the time the person chosen is authorized by his own act to assume the duties of his own office. The term runs from the date of appointment. *State* v. *Breidenthal,* 55 Kas., 308; *Hale* v. *Bischoff,* 53 Kas., 301; *Hughes* v. *Buckingham,* 5 Smed. & M. (Miss.), 652; *Height* v. *Love,* 39 N. J. Law, 476; *Vernon* v. *Seibels,* 60 S. C., 572.

Where the term of an office has been definitely fixed or limited by law, the official authority of a person elected or appointed for such term ceases upon the expiration thereof, and this, no matter at what time in such term he commences service. See authorities from the supreme courts of the United States, California, Illinois, Indiana, Missouri, Nebraska, New York, Ohio and South Dakota, cited in 23 Ency. Law, N. S.,

412.   See also *Jones* v. *State,* 112 Ind., 193; *Barrett* v. *State,* 112 Ind., 322.

The authorities are almost unanimous in holding that if a constitution or a statute, without expressly fixing the term of office, merely provides that an election shall be held or an appointment made annually, or at stated periods, a person so elected or appointed is entitled to hold until his successor is elected or appointed and qualified.   23 Ency. Law, N. S., 413, note 5.   But where it is provided that officers shall be elected for one year only, they cannot hold over beyond the end of the year; and it has been held that where the charter of a public corporation provides that its officers shall be elected annually on a particular day, officers so elected cannot hold over beyond the next election day thereafter.

While it is true, under the weight of authority, that the constitutional and statutory officers are " entitled " to hold over until their successors be elected, this does not excuse the appointing or electing power from the duty to select successors to such offices at the time provided by law or when the term expires.

The word " elected " means that the officer can hold until his successor is named by the electoral body or legislature or other board or department of government authorized by law to elect to the office.   *State* v. *Harrison,* 113 Ind., 434; *Kimberlin* v. *State,* 130 Ind., 120; *People* v. *Whitman,* 10 Cal., 38; *People* v. *Bissell,* 49 Cal., 407; *State* v. *Harrison,* 113 Ind., 434; *State* v. *Thompson,* 34 Ore., 25.   The word " elected " may be used as synonymous with the word " appoint."   *People* v. *Knight,* 116 Cal., 108.

The appellee, Brown, could not be legally removed from office during his term, except for cause.   Code 1906, § 3619.

Argued orally by *C. H. Alexander,* for appellant.

MAYES, J., delivered the opinion of the court.

This is a *quo warranto,* brought by the attorney-general of

the state, on relation of James Brown. The facts stated in the petition are as follows, viz.:

It is alleged that under the laws of the state of Mississippi the board of trustees of the penitentiary was constituted on the 1st day of January, 1907. On that date the relator was elected secretary and clerk of the board as provided by law; that he held his office from the 1st day of January, 1907, until the 31st day of December of the same year, when the term of office for which he had been elected expired, and on the 31st day of December, 1907, at a regular meeting of the board of trustees, he was again elected clerk and secretary of the board for the year 1908, and entered upon the discharge of his duties, duly qualifying on the 1st day of January, 1908. Under this second appointment he continued to discharge the duties of the office of clerk and secretary until the 20th day of January, 1908, when the successors in office of the board of trustees that had appointed him on the 31st of December, 1907, passed the following resolution, viz.: " Whereas, the board of penitentiary trustees of the state of Mississippi, having qualified according to law and taken possession of said office, together with the records, books, papers, and affairs of said office, and entered upon the duties imposed upon them by law, deem it to the interest of the public service that all agents and employes under this board shall be elected by this board: Therefore, for the above reasons, and because we believe the public service requires it, we hereby discharge and dismiss all the persons selected by the outgoing board and declare their offices vacant. Proper vouchers will be issued for the services rendered to date. Ordered this 20th day of January, 1908." After the passage of this resolution the board as it was constituted on January 20, 1908, proceeded to elect other officers in lieu of those discharged by the resolution, and elected Lawrence Yerger as its clerk and secretary for the year 1908, in place of Brown, dismissed. At the same session of the board and on the 21st day of January, 1908, the board as then constituted passed the

following order, viz.: " Ordered by the board that Supt. Ney-land forthwith place the newly elected officers, to-wit, clerk of the board of trustees, prison physician, dispatch surgeon, and commissary clerk, in full and complete possession of their respective offices, together with all books, papers, furniture, and all property belonging to their offices." On the same day, to-wit, the 21st day of January, the following order was also passed: " It is ordered by the board that the former secretary of the board of trustees of the Mississippi penitentiary deliver to the trustees all the records, books and papers pertaining to the affairs of this board for inspection and investigation. We believe that necessity requires that this shall be done at once." The relator refused to deliver the books, papers, records, etc., to the board, except upon condition that they would not be turned over to Yerger as clerk and secretary, whereupon the chairman demanded the unconditional surrender of the records and books, and relator still refused to deliver same until assured that the same would be returned to him, and, finally, in order to assert his right to the office of clerk and secretary of the board for the year 1908, Brown turned over the records, books, etc., pertaining to the office of clerk and secretary of the board of trustees of the penitentiary under protest and under compulsion, claiming that they had no right to demand them from him. After obtaining possession of the books, papers, etc., the trustees placed same in the possession of Yerger, chosen by them to succeed Brown as their clerk, and he now holds said books, papers, records, etc., of the office, and is undertaking to and is discharging the duties thereof; and in this way Brown has been ousted from the office and denied the right to discharge the duties or to receive the salary therefor as provided by law. The petition alleges that Brown is entitled under the law to hold the office for one year from the 1st day of January, 1908, and that Lawrence Yerger is now illegally, unlawfully, and without right exercising the duties of said office and claims the salary provided by law for the services, without any legal right

so to do, and prays for judgment against Yerger for the posses-́
sion of the office, and all the books, records and papers per-
taining thereto.

The agreement of counsel shows that the minutes of the
board of trustees of the penitentiary show the following, to-wit:
That the trustees met in regular session December 3, 1907, and
the adjourning order at that session was: " Ordered, that ·the
board do now adjourn until Monday, December 30, 1907."
The minutes of the meeting of December 30, 1907, recite that
the board met pursuant to agreement and concluded as follows:
" Ordered that the board take a recess until 10 o'clock to-
morrow morning." The board thereupon met December 31,
1907, and elected relator secretary and clerk, and also elected
other officers. The next meeting of the trustees in regular
session was on January 8, 1908. The incoming trustees met,
as stated in the information, on January 20, 1908. Mr. Tay-
lor called attention to the fact that the code chapter has no
requirements as to the date on which employes of the peniten-
tiary shall be elected, but provides that· the trustee shall adopt
rules, regulations, and by-laws for the government of the peni-
tentiary, and offered the following by-law which was adopted:
" All employes of the penitentiary who are selected by the
trustees shall be selected and their terms of office shall com-
mence on the day when the incoming trustees under the law
shall enter into office and annually thereafter."

ʹ To this information a demurrer was interposed, assigning
six grounds of demurrer: First, that the minutes show that
Yerger was lawfully elected secretary and clerk, and is entitled
to the office; second, that it was boynd the power of the out-
going board to elect the secretary to serve during the year 1908
and until January 1, 1909; third, that the outgoing board of
trustees had no legal right to hold adjourned meetings for
the purpose of electing employes for the incoming year; fourth,
that the outgoing board of trustees had no authority to meet on
December 31st and elect employes for the succeeding year;

fifth, that, if relator was legally elected for the year 1908, he was discharged and removed from the office; sixth, if relator was elected for the year 1908, and improperly discharged, the office was not a public office, within the meaning of the statute authorizing *quo warranto,* and the relator has no right to invoke this remedy. This demurrer was overruled, and a judgment rendered in favor of the relator, declaring him to be the lawful clerk and secretary of the board of trustees, and requiring Yerger to deliver over all the records, books, papers, etc., into his care and custody.

The first question to which we shall address our attention is whether or not the clerk of the board of trustees of the penitentiary is filling such an office as will authorize the issuance of the writ of *quo warranto* to determine the right thereto. Section 4017 of the Code of 1906 provides that " the remedy by information in the nature of a *quo warranto* shall lie, in the name of the state, against any person or corporation offending in the following cases, viz.: First, whenever any person unlawfully holds or exercises the functions of any public office, civil or military," etc. By reference to section 3598 of the Code of 1906, it is seen that the office in question is created by the statute. It is not a mere employment by the board in their administrative capacity of a person to do a particular service, but the statute creates the office. It is true that the heading of the section calls them " Employes of the Penitentiary "; but this designation of them does not change the character of their service to the public. In the case of *Monette* v. *State,* Ante 662, 44 South., 989, citing *Shelby* v. *Alcorn,* 36 Miss., 273; 72 Am. Dec., 169, and *Kiersky* v. *Kelly,* 80 Miss., 803; 31 South., 901, it was held that " a public officer is one who has some duty to perform concerning the public, and he is not the less a public officer when his duty is confined to narrow limits, because it is the duty and the nature of that duty which makes him a public officer, and not the extent of his authority." See, also, *Ells* v. *Greaves,* 82 Miss., 36; 34 South., 81. Under

these authorities the duty which Brown is to perform being a duty concerning the public, as contradistinguished from a private employment, and his office being created by the statute, we do not think there can be any question as to the right to resort to the writ of *quo warranto* in this case, or that it can be doubted that he is an officer within the meaning of this section of the statute.

Section 3598 of the Code of 1906 provides that the employes of the penitentiary shall be the clerk of the board of trustees, etc., and provides that the term of office of all employes shall be one year, and that they shall be elected by the board of trustees. When a clerk has been elected and has served his term of one year, unless he is re-elected, by virtue of the statute itself his term expires and his right to fill the office ends. There is no provision made for any of the employes under this statute to hold over; but at the expiration of their term of one year, unless re-elected, their term ends, and they have no further right to act. There is no provision in the statute as to the time when their terms shall commence, nor is there any fixed time as to when their terms shall end; but the statute simply provides that their term of office shall be one year. Under these conditions, there being no term of office fixed by the statute for the commencement of the term, as held in the cases of *Hughes* v. *Buckingham,* 5 Smed. & M., 632, and *McAfee* v. *Russell,* 29 Miss., 84, the term commences from the date of the appointment. Therefore, under the allegations of the petition filed in this case, which shows that Brown was elected on the 1st day of January, 1907, his term of office expired one year from that date, and while the old board was in lawful existence and in the actual discharge of all the duties imposed upon the trustees. This old board continued in office, not only after the time when Brown's term of office expired, but for twenty days thereafter, so that at the time he was elected this was the board of penitentiary trustees under the law, and they had the power to do any and all acts and perform all

the duties imposed upon the penitentiary board. It was not necessary for them to wait until Brown's term of office had actually expired before they re-elected him; for, as a matter of fact, his term of office would and did expire while they as trustees were lawfully in office and had the right to elect a successor. In 23 Am. Ency. of Law (2d ed.), 347, it is said: " It is a comman practice, and undoubtedly proper, for the appointing power, when the necessity for the exercise of the power is ascertained, to make appointments prior in time to that at which the term of the appointee is to begin, where the appointing power of the officer or body making the appointment will continue until the term of the appointee is to begin. Where, however, the appointing power of the officer or body making the appointment will expire before the term of office of its appointee will begin, and vest in its successors, it cannot forestall the right and prerògative of its successors by making appointments to such office."

In section 3598 of the Code of 1906 there is no time specified at which the board of trustees are compelled to elect a clerk; but, when they do elect him, his term begins on the day of his election and ends one year thereafter. Brown had been elected on January 1, 1907, and the board which elected him at that time was by law continued in office as the existing board many days after Brown's term of office had expired. The successors of the board who originally elected him did not qualify and take charge of the office of the board of trustees until nearly twenty days after the expiration of Brown's term of office. Therefore Brown's term of office expired while the power which appointed him was still in office, and they not only had a right to make this appointment, but it was their duty so to do, and they might make it prior to the time at which his term of office began, provided, only, that the term for which they elected him was to begin while they were still the board. It makes no difference whether they elected him on the 31st day of December, or on the 1st day of December, if as a matter of

fact they appointed him and were lawfully in office on the day when he was to begin his second term, and his office was to become vacant during their official life, and ratified that appointment after the expiration of his first term by continuing him in office as their appointee, even though they may have made the appointment prior to the actual vacancy.

In the case of *State* v. *O'Leary,* 64 Minn., 207; 66 N. W., 264, the court says on page 210 of 64 Minn., and page 265 of 66 N. W.: "A prospective appointment to fill a vacancy sure to occur in a public office, made by an officer who, or a body which, as then constituted, is empowered to fill the vacancy when it arises, in the absence of a law forbidding it, is a valid appointment." In the case of *Whitney* v. *Van Buskirk,* 40 N. J. Law, 469, the court says: "The question then presented is whether a body, having as then organized power to appoint to office when it shall fall vacant, may anticipate the vacancy and fill the office by a prospective appointment, in the absence of any statutory regulation to the contrary. The almost uniform course of practice for years in this state, without question or objection, strongly implies the legality of an appointment thus made. Besides, it seems to me that the question is no longer open to controversy in the courts of this state. In the case of *Haight* v. *Love,* 39 N. J. Law, 14, by adjudication of this court, as well as by the court of errors on review, an appointment so made was supported. In that case it is true that the occurring vacancy was anticipated by but a few days; but the principle upon which that appointment was validated is unchanged by the circumstances that as many weeks intervene. The cases cited by the relator in support of an opposite view are not applicable to this case. The case of *Biddle* v. *Willard,* 10 Ind., 62, already mentioned, went off, as I have already shown, upon the construction of local statutes. The same is true of the case of *People* v. *Witherell,* 14 Mich., 48, and *Nooe* v. *Bradley et al.,* 3 Blackf. (Ind.), 158. This ground of objection, therefore, must be denied any force." To the same effect

is the case of *People* v. *Blanding,* 63 Cal., 333; Throop on Pub. Officers, § 91; *Commonwealth* v. *Donovan,* 170 Mass., 228; 49 N. E., 104.

The statute under discussion does not, either impliedly or expressly, forbid the prospective appointment made by the board in this case. The appointment was made under all the circumstances fixed by law for making it valid. The case of *Attorney-General ex rel. Haight* v. *Love,* 39 N. J. Law, 476; 23 Am. Rep., 234, a case to which we call especial attention, because in many of its features it is very similar to the case we are discussing, was a *quo warranto* brought by Haight, claiming to be the city tax collector of Jersey City, and seeking to oust one Love. The facts in the case are these: The charter of Jersey City provided that the new board of finance and taxation should appoint a collector of revenue, to be called a "city collector," who should hold his office for the term of three years, subject to removal by the board for cause, etc. Under this act Love was appointed to the office of city collector for the term of three years. The appointment was made on the 10th day of April, 1873, by the board. He took his oath of office on the 14th day of April, 1873, and gave bond for the faithful performance of his official duties. On the 6th of April, 1876, he was again appointed to the same office for a further term of three years, and under this last appointment he took the official oath on the 7th of April, 1876, and put in his official bond on the 8th of April, 1876. The information filed in the cause denied the validity of the last appointment on the ground that the preceding term of the defendant did not expire until after April 14, 1876, and that on or before April 12, 1876, the term of office of three of the five members of the board expired, in consequence of which the board had no right to appoint; and on the 13th of April, 1876, the board, then composed of the two old members and three new members, undertook to rescind the appointment of the defendant, and appointed the relator as city collector. It will be noted in

the case, *supra,* that Love's term expired just two days before
the old board went out and the new board came in. A de-
murrer was filed by the defendant, which raised the question
of his right to the office upon the facts in the information set
forth, and the court said: " The contest in this case will be
settled by ascertaining the precise time when the defendant's
term, under his appointment of April 10, 1873, ended "— and
held that, the commencement of the term not being fixed by the
charter, it began from the date of the appointment (that is to
say, on the 10th of April, 1873), and ended on the 9th of April,
1876, and further said: " Under this view of the law, when
the defendant, on the 10th day of April, 1873, was appointed
for the term of three years, without any day being expressly
specified in the law for its commencement, the term to which
he was lawfully entitled began on that day, and ended with
the close of April 9, 1876, and consequently the persons who
composed the board of finance on the 6th day of April, 1876,
had the right to select his successor."

This case is authority for three propositions involved in the
case under discussion: First, that the term of Brown began
on the day he was appointed, which was January 1, 1907,
and ended on the 31st day of December, 1907; second, that
although the appointment was made prior to the time at which
his term was to expire, yet, if the term of Brown was to expire
during the life of the board appointing him, it was a perfectly
valid appointment, though made before the actual expiration of
his first term of office; third, that the persons who composed
the board of trustees at the time Brown's term of office expired
had the lawful right to choose him as his own successor, though
they were to be succeeded by a different board in two days after
the appointment was made. Up to the time that the old board
went out of office, they had the right to do and perform all acts
and duties appertaining to their office, and their acts were as
valid and lawful, so long as they continued in office, as were
the acts of their successors. The case of *Whitney* v. *Van Bus-*

*kirk,* 40 N. J. Law, 463, involves much the same question as the case cited *supra.* It follows, from what has been said above, that the order of Mr. Taylor, attempting to fix the time at which the terms of office for all employes of the penitentiary should begin, is a nullity, because, as we have seen from the authorities cited above, the term begins by law at the date of the appointment in cases where the statute creating the office fixes no definite time for the commencement or termination of the term. This statute we are called on to construe fixes no time either for the commencement or ending of the terms of the officers of the penitentiary. It merely limited the time of their service to one year. This being the case, under the law the term commenced from the date of the appointment, and the resolution offered by Mr. Taylor could not have the effect of changing the law upon this subject. Now, we have shown from the authorities cited above that the time of the commencement of the term begins from the date of the appointment. We have also shown that the board, as constituted when Brown was elected for his second term, had the right to make the election. We have also shown that it was not necessary for the board to wait until the term of Brown actually expired before making the election, but that they might make a prospective appointment in this case; it being shown that his term would expire while the then constituted board was still in office.

The next question for us to consider is: Has the new board the power to remove the officers elected by the old board, except for cause? In order to determine this question, it will be necessary to review the statute to some extent. Section 3598, creating the offices, provides that "all of said employes shall be elected by the board of trustees, and their term of office shall be one year." It will be seen that the term of office is expressly fixed by this statute for one year. It will also be noticed that, though the trustees are to serve for a period of four years, employes must be elected at the expiration of every year. The statute does not provide that they shall hold their office

at the will or pleasure of the board of trustees, but expressly fixed their term for the period of one year. There is not even any provision for their holding over until their successors are elected. At the expiration of this one year, unless re-elected, they are out of office. The usual term of all officers under the Constitution and statute is four years. Was the making of their term for a period of one year by the legislature unintentional? Was the fixing of the time that they should serve and be in office for a shorter period than almost any other officer provided for in the code unintentional? Was the failure to provide in the section that these employes should hold at the will or pleasure of the trustees a *casus omissus?* We are not warranted in reaching this conclusion. The language of the statute is plain, unambiguous, and so written; and it is not for us to change it, or to hold that the legislature meant something different from what they plainly expressed in the law.

In construing this statute, let us take up other provisions of the law dealing with subordinate officers. We will see that, in every instance where it was the intention of the legislature to make a subordinate officer hold at the will or pleasure of the appointing power, it has said so. Thus by section 4726 the librarian is given power to appoint an assistant, and at the same time the right to discharge the assistant at pleasure. Section 183 empowers the attorney-general to appoint an assistant attorney-general, and gives him the right to discharge such assistant at pleasure. Section 236 of the Code of 1906 gives the auditor the power to appoint a deputy and certain clerks, and gives him the power to remove them at pleasure. From this we see that the section in reference to subordinate officers of the penitentiary is not an unusual provision in the code, and where it was the intention of the legislature to give the appointing power the right to remove subordinate officers at pleasure they have specified it. What is the rule in reference to the right of removal where the terms of the office are fixed by statute, and the office is not held at the will or pleasure of the

appointing power? In Mechem on Public Officers, § 454, the following rule is laid down: " In those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion, it is well settled that the officer may be removed without notice or hearing. But on the other hand, where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause for which the power is to be exercised must first be determined after notice has been given to the officer of the charges made against him and he has been given an opportunity to be heard in his defense." In the case of *Hallgren* v. *Campbell,* 82 Mich., 255; 46 N. W., 381; 9 L. R. A., 410; 21 Am. St. Rep., 557, it is said: " We have not found any case where an officer who was appointed for a fixed term, and when the power of removal was not expressly declared by law to be discretionary, where it has been held that an officer is removable, except for cause; and wherever cause must be assigned for removal of the officer he is entitled to notice and a chance to defend." To the same effect is *Field* v. *Commonwealth,* 32 Pa., 478; *State* v. *St. Louis,* 90 Mo., 19; 1 S. W., 757; *Collins* v. *Tracy,* 36 Texas., 546; 23 Ency. of Law (2d ed.), 435.

Under section 3619 of the Code of 1906 the express power is given to the board to investigate charges of misconduct of officers and employes, and to suspend or discharge the officers and employes for misconduct. Under section 3598 the employe's term is for a fixed time, and he does not hold at the will or pleasure of the board. Section 3619 does not confer arbitrary power of dismissal, but only the power to suspend or discharge officers and employes on charges made of misconduct or incompetency which amounts to misconduct; and this is the measure of their authority to dismiss an employe, and

even then it is necessary that the officer be given an opportunity to be heard before being removed. There were no charges of misconduct or incompetency made against the relator, nor was he given an opportunity to be heard; but the board says in its order merely "that they deem it to the interest of the public service that all the agents and employes under this board shall be selected by this board. Therefore, for the above reason, and because we believe the public service requires it, we hereby discharge and dismiss all persons selected by the outgoing board and declare their offices vacant." We do not think the case of *Ott* v. *Lowrey,* 78 Miss., 487; 29 South., 520, can be invoked as an authority in this case. The decision of that case turns upon a very different question, and the court said, in deciding that case, that "the plain purpose of the code provision was that the new board — the incoming administration — should choose the clerk, the tax collector, and the police justice, unembarrassed by any opposition on the part of the retiring board." In the *Ott case* it was because that statute itself manifested, as the court said, the plain purpose that the incoming administration should choose the officers, that the court held that the outgoing board could not elect. No such purpose as this can be gathered from the section of the statute now under discussion. A comparison of the facts in the *Ott case* with the case under discussion will readily show that the two cases are quite different. We do not undertake to say in this case what facts constitute cause; but we do say that the officers employed under section 3598 of the code cannot be dismissed for the reasons assigned in this order, nor can they be summarily dealt with in this way, but can only be dismissed for cause and after a hearing.

*Affirmed.*