SIMPSON *v.* CITY OF GULFPORT, MISSISSIPPI, et al.

No. 41639 June 13, 1960 121 So. 2d 409

*Buntin & Martin,* Gulfport; *Creekmore & Beacham,* Jackson, for appellants.

*Eaton, Cottrell & Galloway, T. Upton Sisson, Stanford E. Morse, Jr.,* Gulfport; *Wm. Joel Blass,* Wiggins, for appellees.

ETHRIDGE, J.

The question in this case is whether the Gulfport Port Commission at a special, called meeting on December 5, 1959, validly approved a contract between the City of Gulfport and the State Agricultural and Industrial Board (sometimes called A & I Board), providing for conveyance of the port property to the state; or conversely, whether that special meeting of December 5 was invalid because it was not held pursuant to notice as required by rules of the Commission, and no quorum was present at the meeting. If the latter, the Commission did not authorize the transfer, as required by statute. We have concluded that the attempted approval of the contract with the A and I Board at the alleged special meeting of December 5 was void for the reasons stated above. Hence the decree of the chancery court sustaining general demurrers to the bill of complaint filed by W. G. Simpson, appellant, and dismissing the bill with prejudice was in error. It is reversed and the cause remanded.

I.

A brief outline of the pertinent statutes will facilitate definition of the issues. Miss. Code 1930, Secs. 4849-4852, being Miss. Code 1942, Secs. 7546-7549, created a Port Commission in any city in this state having a seaport or harbor designated as a port of entry by the United States Government. The Port Commission is composed of five resident citizens of the city and has jurisdiction over the port, and terminals and vessels using it. Three members of the Port Commission are appointed by the mayor and board of commissioners of the city; one by the governor; and one by the county board of supervisors. Code Sec. 7547 further provides: "Said commissioners shall hold office for a term of four years from the day of their appointment and qualification, and until their successor or successors shall be appointed and qualify as set out herein."

The 1930 act states that, when the port commissioners are appointed and have qualified, they shall hold their original meeting at the legal meeting place of the municipal authorities, "after giving at least ten days notice of the time and place of such meeting by publication in a newspaper published in such city, and they shall elect a president and secretary, who shall be members of the commission."

With reference to the rule-making power of the commission, Code of 1942, Sec. 7549 states: "It shall be the duty of the Commission to keep a minute book in which shall be recorded all of their acts, orders, rules and regulations. It shall be the duty of said Commission to adopt rules and regulations not inconsistent with law to govern their official acts."

In 1958 the legislature enacted the State Ports and Harbors Act, which is the source of this litigation. Miss. Laws 1958, Ch. 365, being Miss. Code 1942, Rec., Secs. 7564-01 to 7564-31. The purpose of this statute is to encourage the development of the state's ports and harbors. Sec. 2. The Mississippi Agricultural and Industrial Board is given the power to acquire and operate ports and harbors in the state. Sec. 4. If a city for which a port commission has been heretofore created desires state ownership of such port, it is authorized to employ engineers to prepare an analysis of the financial and property status of the port. Sec. 5. The city may then apply to the A and I Board for state ownership. The Board makes an independent appraisal of the application. If it finds the application is practical and the port can be operated economically under state ownership, Sec. 6 gives the Board in its discretion authority to negotiate with the city and port commission on the terms of an agreement for the acquisition by the state of the port. The Board may modify the application and impose such terms and conditions as in its discretion are needed to protect the interests of the state. The remainder of Sec. 6 of the 1958 act provides for the

method of approval of an agreement of transfer, and for an election in the city, if the entire port or harbor is to be conveyed to the state. It states:

"Any agreement reached between the Board and the city or county, or other authorized port or harbor agency, shall be reduced to writing and shall set out the terms and conditions under which such port or harbor, or any part thereof, shall be conveyed to the state and shall specifically set out the minimum amount of bonds, if any, to be issued by the state for the improvement, operation, development, and expansion of such port or harbor, or any part thereof. *When such agreement has been approved by the Board, the city or county, or other authorized port or harbor agency, and the Port Commission, or Port Authority of the city or county,* a conveyance of such port or harbor, or any part thereof, to the State of Mississippi, shall be executed by the city or county, or other authorized port or harbor agency, joined in by the Port Commission or Port Authority of the city or county, without monetary consideration. Such conveyance shall be in such form as may be prescribed by the Board, but shall be conditioned on the issuance of bonds by the state in the minimum amount set out in such agreement for the improvement, operation, development or expansion of such port or harbor, or any part thereof. *If such agreement shall provide that the entire port or harbor shall be conveyed to the state and shall be owned and operated by the state, then no such agreement shall become effective until approved by a majority of the qualified electors of the city* or county having jurisdiction of such port or harbor voting in an election called for that purpose in the same manner as in other city or county special elections." (Emphasis added.)

On December 19 and 26, 1959, and on January 2, 1960 the Gulfport City Commission commenced advertising in a local newspaper of an election proposed to be held in the city on January 12, 1960, for the approval or dis-

approval of a contract to transfer the Port of Gulfport to the State of Mississippi, in accordance with the 1958 Act. The final publication of such notice was scheduled to be published on Saturday, January 9, 1960.

On January 6, 1960 appellant, W. G. Simpson, and two others, who subsequently have withdrawn from this appeal, filed a bill of complaint in the Chancery Court of Harrison County against appellees, the Mayor and Commissioners of the City of Gulfport; the three Election Commissioners of the City; The Biloxi-Gulfport Daily Herald, Inc.; and the Gulfport Port Commission. It was alleged that the Port Commission is composed of Arthur W. Lang, Sr., W. H. Caraway, Robert Barber, Jr., T. H. Anderson, B. F. Keyes, and J. K. Milner, "a purported member of said Commission." The bill was in the nature of a taxpayer's suit, filed on behalf of complainants and all other taxpayers similarly situated. It invited any and all other taxpayers to join in the suit, and averred that the Attorney General of the State and the district attorney of that district had been requested to file the action, and had refused to do so. The bill alleged that the Gulfport City Commission had begun publication of notice of the election to be held on January 12, 1960; that approval of the contract by the Gulfport Port Commission was a nullity, since it had attempted to approve the agreement at an invalid meeting held by two commissioners and an individual, Milner, on December 5, 1959; that the special meeting was not called in accordance with the rules of the Board, and also at such meeting a quorum of the Port Commission was not present. The bill averred that, since the Gulfport Port Commission had never validly approved the contract, and such approval is a prerequisite to approval by the Mississippi A and I Board, and to an election thereon, the chancery court should grant the following relief: (1) Enjoin publication of final notice of election by the newspapers on January 9, 1960; (2) enjoin holding of the election by the Gulfport City Com-

mission and the City Election Commissioners; and (3) enjoin any conveyance of the port from the City of Gulfport to the State of Mississippi.

The bill of complaint had attached to it numerous exhibits setting forth the proceedings of the Gulfport Port Commission and the proposed contract, further reference to which will be made subsequently. The bill asked for a temporary injunction pending hearing on the merits.

On January 11, 1960, the first day of its regular term, the Chancery Court of Harrison County, after hearing lengthy arguments on various issues, sustained the general demurrers to the bill of complaint, and dismissed the bill. This appeal is taken from that decree.

Since we hold that the bill stated a good cause of action on its face and the demurrers should have been overruled, it is not necessary to consider several otherwise important issues vigorously argued in the briefs. They pertain to: (a) The issuance of a temporary injunction without notice by the chancellor of another district after the chancellor of the Harrison County district and a Justice of this Court had declined to issue such injunction without notice; (b) the effect of a writ of supersedeas issued by a Justice of this Court after the Chancery Court of Harrison County on January 11 sustained demurrers to the bill, dissolved the temporary injunction, and dismissed the bill; and (c) whether Miss. Code 1942, Sec. 1348, providing for hearing of motion to dissolve temporary injunction five days after answer filed or on three days notice to opposite party, precluded the chancery court from dissolving the same on January 11.

In the posture of this case, our decision is based upon an answer to the inquiry as to whether the bill of complaint stated a good cause of action on the demurrers filed to it. Assuming the allegations of fact in the bill to be true on the demurrers filed by defendants, the question is whether the bill stated sufficient reasons to warrant the requested relief.

## II.

The decisive issue involves determination of whether the special meeting of the Gulfport Port Commission on December 5, 1959, validly approved the contract providing for conveyance of the port property to the State.

It should be remembered that this suit is on bill and general demurrers to it. Exhibit B to the bill reflects that on November 25, 1959, the Gulfport Port Commission held a regular meeting at which all of the Commissioners were present. At this meeting the Port Commission passed a resolution adopting procedures for the calling of special meetings. The resolution recited there had been a great deal of confusion and complaint regarding the question of notice of special meetings, so Sec. 1 states:

"That special meetings may be called only by written notice signed by the President and at least one other Commissioner. In the event, however, the President refuses to call a special meeting, same may be called by a written notice signed by all of the other Commissioners, acting jointly. All notices of any special meeting shall be mailed to the usual address of each Commissioner, at least five (5) days prior to the date thereof, or may be delivered personally three (3) days prior to the date thereof. In the event such notice is not given, as above provided, then special meetings can only be had and be of legal effect upon a written waiver of notice thereof being signed by the President and at least two other Commissioners attending. The President shall be considered as a Commissioner, regarding the signing of the waiver of notice. If the special meeting is called by the other Commissioners, as provided herein, without written notice as set out, then a written waiver of said notice must be signed by all of the qualified Commissioners, with the exception of the President. Any special meeting attempted to be held, not complying with the above procedure, shall be of no legal effect and shall not be an official special meeting."

On December 5, 1959, there was attempted to be held a special meeting of the Gulfport Port Commission. The minutes of the December 5 meeting reflect it was held pursuant to notice of a special meeting issued on December 1 by Commissioners Anderson, Milner and Barber. As will be stated hereafter, one important issue is whether Milner was a commissioner on December 1 and 5. Notice was served upon Commissioners Caraway and Lang, but no notice was served on Commissioner Keyes, whose term appellants assert continued to December 6. The notice, dated December 1, of the special meeting for December 5 stated that Barber, Anderson and Milner constitute a majority of the Gulfport Port Commission, and they were calling the meeting for the business of considering a contract conveying the port to the State, and any other business that may properly come before them. At the meeting of December 5, these three persons were present as commissioners, namely, Barber, Anderson and Milner. The President of the Port Commission, A. W. Lang, Sr., did not join in the call of this special meeting, and was not present at it. On this occasion Commissioners Anderson, Barber and Mr. Milner passed resolutions rescinding the resolution of November 25 with reference to procedures for calling special meetings; rescinding a resolution designating Commissioners Lang and Caraway to act for the Port Commission with reference to the contract and transfer of the Port; providing that such meetings could be called at any time by the President or any three members, on three days notice, or sooner by waiver of all members of the Commission; and approving the contract conveying the port to the State.

The above quoted Sec. 6 of the 1958 State Ports and Harbors Act clearly requires an approval of the contract by the Port Commission as well as the City Commission and the A and I Board prior to its submission to the qualified electors of the city for approval or disapproval. Section 6 states the agreement between these

parties shall be reduced to writing, and, when approved by them, a conveyance shall be executed; but if the agreement provides the entire port shall be conveyed, "then no such agreement shall become effective until approved by a majority of the qualified electors of the city. . ." Miss. Code 1942, Rec., Sec. 7564-06.

The actions taken at the purported December 5 meeting of the Gulfport Port Commission were ineffective and invalid for two reasons.

*First*: The special meeting was not called and held in accordance with the procedural requirements established by the Port Commission itself in its resolution of November 25, 1959. The special meeting of December 5 was not called by any written notice signed by the President, Lang, and one other commissioner, as required by Sec. 1 of the November 25 resolution. Moreover, in the alternative, it was not called by a written notice signed by all of the other commissioners. It is undisputed that Commissioner Caraway did not sign the call, nor did Commissioner Keyes sign it, concerning whose status later comment will be made.

The next question is whether the November 25 resolution is a valid exercise of rule-making power. Code Sec. 7549 broadly grants to the Port Commission a power to make rules and regulations "not inconsistent with the law to govern their official acts." The Port Commission has such powers as are conferred upon it either expressly or impliedly. The statute does not define the times or methods of calling regular or special meetings. The November 25 resolution simply implements the broad statutory grant of rule-making power in this respect. In the absence of a manifest abuse of its discretion, or acts in excess of its statutory powers, we cannot say that the Gulfport Port Commission exceeded its rule-making powers in establishing methods of calling special meetings. Essentially, the November 25 resolution was a proper exercise of the Commission's control over its own proceedings. Certainly we cannot

say it was an abuse of its discretion. See 42 Am. Jur., Public Administrative Law, page 389.

■ ■ When an administrative agency attempts to take action as an agency at a special meeting, the meeting must have been called in accordance with the statutes or duly promulgated rules. Failure to comply with them invalidates actions taken at such a special meeting. 42 Am. Jur., Public Administrative Law, page 389; Lee County v. James, 178 Miss. 554, 174 So. 76 (1937); State v. Alexander, 158 Miss. 557, 130 So. 754 (1930); Green v. Sparks, 174 Miss. 71, 163 So. 895 (1935); Kidder v. McClanahan, 126 Miss. 179, 88 So. 508 (1921); Okolona v. Chickasaw County, 171 Miss. 424, 157 So. 690 (1934).

■ ■ The procedure set forth in the November 25 resolution was binding upon the Commission until revoked at a meeting called in accordance with that resolution. It was mandatory in nature, and apparently was designed to provide a definite procedure for calling such meetings, with adequate notice for all of the Commissioners and the public.

■ ■ *Second*: The meeting of December 5 and the actions taken at it were invalid for the further reason that there was not a quorum of the Commissioners present.

Exhibit C to the bill of complaint reflects that at a meeting of the Mayor and Commissioners of the City of Gulfport on December 6, 1955 "B. F. Keyes was appointed for a four-year term effective December 1, 1955." It should be noted that this appointment was actually made by the Mayor and Board of Commissioners of the City of Gulfport on December 6, 1955.

On December 1, 1959 the minutes of the Mayor and Board of Commissioners reflect the following resolution: "Mr. J. K. Milner was appointed a member of the Gulfport Port Commission for a four-year term beginning December 1, 1959." Milner was to succeed Keyes in his post.

In short, the mayor and commissioners attempted to appoint Keyes on December 6, 1955 for a four-year term effective December 1, 1955; and on December 1, 1959 they undertook to appoint Milner for a four-year term beginning December 1, 1959.

The question is whether the City Commission's appointment of Keyes for a four-year term began on the date that body made the appointment, December 6, 1955, or whether it began on the date the Commission's resolution attempted to make it effective, December 1, 1955.

Code Sec. 7547 states: "Said commissioners shall hold office for a term of four years *from the day of their appointment and qualification,* and until their successor or successors shall be appointed and qualify as set out herein." (Emphasis added.) An appointment under the act is therefore effective from the day of its making and the qualification of the appointee. It follows that the appointment of Keyes, made on December 6, 1955, began on the day of his appointment and qualification, which was December 6, 1955. His four-year term ran from that day until December 6, 1959. Hence the City Commission's appointment of Milner for a four-year term could not begin until Keyes' term ended, December 6, 1959, at which date Milner's began.

Accordingly, the attempted call and notice of a special meeting, dated December 1, 1959, by Milner and Commissioners Barber and Anderson, was not made by a majority of the Commission, even if we assume that a majority could call such a special meeting despite the resolution of November 25. On December 1 and 5 Milner was not a member of the Gulfport Port Commission. There was not a quorum present at the special meeting of December 5.

Code Sec. 7547 controls this question. Keyes' preceding term as Commissioner began on the day of his appointment and qualification, December 6, 1955, and by the same token Milner's four-year term began four years thereafter, December 6, 1959. However, in the ab-

sence of statute the general rule is to the same effect. Hughes v. Buckingham, 5 S. & M. 632 (Miss. 1846), held that the four-year term of a court clerk appointed by the chancellor commenced upon the day of his appointment by the judge. See also Smith v. Halfacre, 6 How. 582 (Miss. 1842); Yerger v. State, 91 Miss. 802, 45 So. 849 (1908); 67 C. J. S., Officers, Sec. 44(c), p. 198; 43 Am. Jur., Public Officers, Sec. 151, p. 11. The authorities proceed on the principle that the beginning and expiration of appointive terms should not be left to the discretion of the body having the appointive power, in the absence of express authorization. Clark v. State, 177 Ala. 188, 59 So. 259 (1912); 43 Am. Jur., Public Officers, Sec. 155, p. 15; 67 C. J. S., Officers, Sec. 46, p. 200; People v. Nickel, 9 Cal. App. 783, 100 p. 1075 (1909). Hence Milner was not a member of the Port Commission on December 1, when the notice of special meeting was issued, or on December 5, when the attempted special meeting of the commission was held and the contract to sell the port was attempted to be approved.

In summary, the proceedings and acts attempted to be done at the asserted meeting of the Gulfport Port Commission on December 5, 1959, were invalid and void, because (a) the meeting was not called in accordance with the procedure previously established by the commission in its resolution of November 25 for the calling of special meetings, and (b) there was not a quorum of the commissioners present at the December 5 special meeting. Only two commissioners were present. Milner's term had not then begun.

### III.

Appellees contend that the Commission ratified and confirmed the contract of December 1, 1959, as approved on December 5 between the City of Gulfport and the A and I Board, acting for the State, at meetings of the Port Commission on December 9 and 30, 1959. How-

ever, those issues are not now before the Court. The chancery court decided this case on the basis of appellees' general demurrers and motions to dissolve the temporary injunction. So the issues here are confined to the allegations in the bill of complaint, which makes no reference to any meetings of the Commission subsequent to December 5. The asserted subsequent meetings are described in answers filed by appellees, but the decree was not based upon answers, replications to the answer, or evidence concerning such subsequent meetings. Hence we do not pass upon any questions pertaining to ratification by subsequent meetings of the Port Commission.

 Simpson appealed to the Circuit Court of Harrison County from the action of the Gulfport Mayor and Commissioners of December 18, 1959, ordering publication of notice of the election. Apparently the appeal was taken by a bill of exceptions under Miss. Code 1942, Sec. 1195. Appellees contend that appellant has an adequate remedy at law, has elected his method of seeking relief, and is precluded from bringing this action in chancery. There is no merit in this contention. The bill of complaint averred that, although complainants appealed by bill of exceptions to the circuit court from the City Commission's resolution ordering the election, the circuit court did not meet for several months, and such remedy would be inadequate and too late to affect the proposed election and transfer. Moreover, an appeal from the City Commission's order prior to the election would appear to be premature, in view of the decision in Costas v. Board of Supervisors, 196 Miss. 104, 16 So. 2d 378 (1944). An appeal to the circuit court could have been taken properly within ten days after the election of January 12, 1960. This would have been too late to stop the election and transfer of the port. Moreover, the doctrine of election of remedies has been carefully limited in this state, and is usually not applied where there is some reasonable doubt as to the

correct method, or there is a mistake which has prejudiced no one. Edwards v. Edwards, 193 Miss. 889, 11 So. 2d 450 (1943).

This taxpayers' suit is properly brought within the rules pertaining to such actions. McKee v. Hogan, 145 Miss. 747, 110 So. 775 (1927); Golding v. Armstrong, 231 Miss. 889, 97 So. 2d 375 (1957).

██ █ We hold that the chancery court erred in sustaining general demurrers to the bill and dismissing it. They should have been overruled. The basis of this decision is that, on this record, the alleged special meeting of the Gulfport Port Commission of December 5, 1959, at which it was attempted to approve the contract providing for the conveyance of the port to the State, was not called in accordance with the Commission's rules for special meetings, and a quorum was not there present. Hence all of that done on December 5 was invalid and void. The bill of complaint stated a good cause of action. The decree of the chancery court is reversed, and, since the case was decided on the pleadings, the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

*McGehee, C. J.*, and *Hall, Lee, Kyle,* and *Gillespie, JJ.,* concur.