Statement of the case.

JOHN OTT v. STATE, EX REL. RICHARD J. LOWERY.

1. MUNICIPALITIES. *Election of inferior officers.* Code 1892, § 2992. *Outgoing and incoming boards. Regular meetings.* Code 1892, § 2989. *Ib.*, § 3030.

   Under code 1892, § 2992, providing that at the first regular meeting of the mayor and board of aldermen succeeding each regular municipal election, they shall elect inferior municipal officers, the new or incoming mayor and board of aldermen alone have the right to elect such officers; and this is true even when a regular meeting, under code 1892, § 2989, is to be held by the old board after the election, and before the organization of the new one, as provided in code 1892, § 3030.

2. SAME. *Code* 1892, § 2992. *Time. Usual course of. Exceptional.*

   The statute, code 1892, § 2992, must be construed in the light and as part of the entire chapter on municipalities; it was adopted in view of the general course of things, and without reference to the exceptional.

3. STATUTORY CONSTRUCTION.

   "A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers." *People v. Utica Insurance Co.*, 15 Johnson (N. Y.), 358.

4. SAME. *Contemporaneous construction.*

   Contemporaneous construction, by those whose duty it is to act under and administer it, is helpful in arriving at the meaning of a doubtful statute.

5. SAME. *Absurdity.*

   Courts will not, if it can be avoided, give a statute a construction which leads to absurdity.

FROM the circuit court of Harrison county.

HON. THADDEUS A. WOOD, Judge.

The state, on the relation of Lowery, appellee, was the plaintiff, and Ott, appellant, was the defendant in the court

below. The suit was a *quo warranto* proceeding instituted to settle between the parties the question which one of them was the tax collector of the city of Biloxi.

On the 11th day of December, A.D. 1900, a regular election was held in said city, and certain persons were elected to the offices of mayor and aldermen. After this election, and on the first Tuesday of January, being the first day of the month, the board of mayor and aldermen then sitting, and whose term expired upon the first Monday of January, the 7th inst., undertook to elect the officers who are by law required to be selected by the mayor and board of aldermen. Among other officers chosen by them was Lowery, appellee, as tax collector. On January 7 the new mayor and board of aldermen qualified as such and entered upon the discharge of their official duties. The meeting was regularly called for the purpose of electing officers and organizing the board, and was attended by the mayor and all the aldermen. At that meeting two candidates were placed in nomination for the office of tax collector, Lowery, appellee, and Ott, appellant. Prior to the calling of the roll, the mayor announced that he was entitled to vote when the roll was called, and directed the secretary to call his name. Five aldermen voted for Lowery, appellee, and four aldermen and the mayor voted for Ott, appellant. Upon the tie thus created, the mayor claimed and exercised the right to give the deciding or casting vote, and voted for Ott, declaring him elected, and issued a commission to him, and he entered upon the duties of the office. Thereupon this suit was begun. The plaintiff, Lowery, having obtained judgment in his favor in the court below, Ott, the defendant, appealed to the supreme court.

*Bowers, Chaffee & McDonald* and *Virgil A. Griffith* and *McWillie & Thompson,* for appellant.

The inquiry which lies at the threshold of this case is, which board of mayor and aldermen was by law authorized to elect the municipal officers of Biloxi for the ensuing term. This

question turns upon the construction of three sections of the code chapter on municipalities: §§ 2989, 2992 and 3030.

By § 3030 it is provided that a general municipal election shall be held on the second Tuesday in December, and that the officers elect shall qualify and enter upon the discharge of their duties on the first Monday in January after such election.

By § 2989 the regular meetings of the mayor and board of aldermen are fixed for the first Tuesday of each month, and by § 2992 the mayor and board of aldermen are directed to elect officers at the first regular meeting "succeeding each regular municipal election."

By the evolution of time, it so happens that (aside from leap years) once in seven years the first Tuesday of January occurs prior to the first Monday, and before the officers-elect are inducted into office. This was the case in the year 1901, and the regular meeting in the month of January, therefore, occurred before the old mayor and board of aldermen had surrendered their offices, and before the members of the new board had taken their seats.

In considering the right of the old officers to perpetuate their power for two years beyond their official lives, and to select for the new term the minor officers of the city, it will be appropriate to consider the whole chapter on the subject of municipal government and the whole plan and scheme thereof. It must be apparent that in enacting the statute the legislature dealt with that state of affairs which generally arose, which each town had before it, without any reference to the trick of time which, once in eight years, put Tuesday before Monday. The most ardent advocate of the right of the outgoing board to elect these officers, will never for a moment contend that the lawmaking power contemplated such a result; they plant themselves upon the proposition *ita lex scripta est*, and, Shylock like, insist that it is "the letter of the bond."

The provision requiring the officers elect to qualify and enter upon the discharge of their duties on the first Monday in Janu-

ary, is in harmony with the rest of the law of the state; it was simply following a general law which sent the state and county officers generally into office at that time. Some day had to be chosen, and the first lay day of the week was selected as the most appropriate day. The regular meetings of the municipal body were placed upon Tuesday, the day succeeding this, and officers were required to be chosen at the first regular meeting succeeding the election.

The construction of these three sections leads us irresistibly to the conclusion that it was designed that the incoming board should meet immediately after it was inducted into office, and that the servants of the municipality should be chosen by it. If this were not true, why was the meeting fixed the day after the time at which the officers took possession, and why, indeed, was the day at which they were to be chosen fixed to come after the general election? It was arranged to come next succeeding the general election, manifestly because the servants of the people, recently chosen by them, were to exercise their powers of attorney and to select officers for them, immediately after they had been selected for that purpose. No other intention can be deduced from these sections nor from a consideration of the whole chapter; its meaning is clear, no hardihood will reach the point of denying that fact; it only remains to be seen whether the courts have the power to carry it into effect.

There is no authority in the books, no matter how strict may be the constructionist, for the proposition that the legislative intent, clearly discoverable from an act under consideration, cannot be executed by the courts. As far as the most extreme have ever gone on this line, is to say that the court's presumption, from matters dehors the act, as to the intention of the legislature, will not be permitted to control the plain words and meaning of the law. In finding the legislative intent in this case the whole act, that is the entire chapter on municipalities, is to be considered, because it is one complete

whole, each section of which serves to illumine· and explain every other.

There is no question better settled than that a thing which is within the intent of the makers of a statute, is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute, is not within the statute unless it be within the intention of its makers. *Riggs* v. *Palmer*; 5 L. R. A., 340 ; Black on Interpretation of Law, sec. 29, pp. 48 to 55 inclusive and cases there cited ; *Jackson* v. *Collins*, 3 Cowen, N. Y., 89.

In construing a statute a purpose to disregard sound public policy must not be attributed to the lawmaking power, except upon the most cogent evidence. *Jersey City Gaslight Co.* v. *Commissioners Gas Co.*, 40 N. J. Equity, 427.

The reason or cause which moves the will, is of the greatest force in finding out the true meaning of the instrument, and here that common law saying takes place that, the reason ceasing, the law itself ceases. 1 Coke upon Littleton, 70.

Every statute should be explained, not according to the letter but according to the meaning, for he who considers merely the letter of an instrument goes but skin deep into its meaning. "*Qui haeret in litera haeret in cortice.*" *Magdaline College case*, 11 Coke, 73.

For when the intention is clear too much stress should not be laid upon the strict and precise significance of words. 2 Blackstone Com., 379.

The duty of the court, being satisfied of the intention of the legislature, clearly expressed, is to give effect to that intention, and not to defeat it by adhering too rigidly to the mere letter of the statute, or to technical rules of construction. *Oates* v. *Bank*, 100 U. S., 239.

The general rule denying the engrafting of an exception upon a statute, is subject to the qualification that if it serves to obviate a construction which would be unjust, oppressive and

unreasonable, the exception will be allowed.    5 L. R. A., 341, note and cases cited.

And unquestionably exceptions not provided for in the statute are allowable under the maxim " *contra non valentem agere nulla currit praescriptio.*"    1 Pothier, 251 ; 5 L. R. A., 341, note.

It will also be presumed that the legislature intended such exceptions to its language as would avoid injustice, oppression or absurd consequences ; the reason of law, in such cases, should prevail over the letter.    *United States* v. *Kirby*, 74 U. S., 482 ; *Reich* v. *Smythe*, 80 U. S., 162 ; *Ex parte Ellis*, 11 Cal., 222.

It is not the words of the law, but the internal sense of it that makes the law ; the letter of the law is the body, the sense and reason of the law are the soul.    *Eyestein* v. *Studd*, Plowden, 459.

When the effect and design of a statute are manifest, and which construed literally would be to impute to the legislature an unjust and unreasonable intent, its letter must yield to its spirit.    *Murray* v. *New York Central R. R. Co.*, 4 Keyes, 276; *U. S.* v. *Claflin*, 97 U. S., 546.

The true meaning is to be found not merely from the words of an act, but from the causes that existed on its being made, and from the comparison of its several parts and from extraneous circumstances.    *Hawkins* v. *Agallier*, 6 DeGex, M. & G., 1; *Stradling* v. *Morgan*, Plowden, 204; *Reg.* v. *Collingwood*, 12 Q. B., 681; *Tracey* v. *Card*, 2 Ohio State, 431; *Cincinnati Gaslight Co.* v. *Avondale*, 43 Ohio State, 257.

The spirit as well as the letter of a statute must be respected, and where the whole context of the law demonstrates a practical intent to effect a certain end, some degree of implication may be called in to aid the intent.    *DeRosseau* v. *United States*, 6 Cranch, 307.

The administration of justice requires something more than the application of the mere letter of the law to cases, however

modified by accident or withdrawn by extraordinary circumstances from the spirit of the enactment.    *Clark's Succession*, 11 Louisiana Ann., 124.

There are cases which require the courts to disregard the letter of the statute when manifestly opposed to its spirit, and all that is necessary is a moral conviction, based on the unreasonableness of the application sought to be made, that the legislature could not have intended such results.    *Napier* v. *Foster*, 80 Ala., 379.

Where the real design of the legislature in ordaining a statute, although not precisely expressed, is very plain and perceivable, or ascertainable with reasonable certainty, the language of the statute must be given such construction as will carry that design into effect.    *Brown* v. *Barry*, 3 Dallas, 365; *Minor* v. *Mechanics Bank*, 1 Peters, 46; *Binney* v. *Chesapeake & Ohio Canal Co.*, 8 Peters, 201.

The exact and literal wording of an act may sometimes be rejected, if upon a survey of the whole act and purpose to be accomplished, it is plain that such exact and literal rendering would not carry out the legislative intent.    *Bell* v. *New York*, 105 N. Y., 139; *Reynolds* v. *Holland*, 35 Ark., 56; *Smith* v. *Randall*, 6 Cal., 47; *People* v. *Dana*, 22 Cal., 11; *Kennedy* v. *Kennedy*, 2 Ala., 571; *Thompson* v. *State*, 20 Ala., 54; *Sprowl* v. *Lawrence*, 33 Ala., 679; *State* v. *Poydras*, 9 La. Ann., 165; *State* v. *King*, 44 Mo., 283; *Tonnell* v. *Hall*, 4 N. Y., 140; *Big Black Creek Imp. Co.* v. *Commonwealth*, 94 Pa., 450; *Simon* v. *Powers*, 28 Vt., 354.

A construction leading to absurdity, injustice or contradiction is to be avoided.    *Hunt* v. *Lake Shore & M. S. Co.*, 112 Ind., 69; *Sawyer* v. *State*, 45 Ohio State, 343.

When to follow the words of a statute would lead to absurdity as to its consequences, that constitutes sufficient authority to the interpreter to depart from it.    *Perry County* v. *Jefferson County*, 94 Ill., 214.

It will not be presumed that the legislature intended what was unreasonable. *Ninon* v. *Smith,* 50 Mo., 525.

And no statute shall be construed in such a manner as to be inconvenient or against reason. *Hall* v. *Wybourn,* Carthew, 136; *Wall* v. *Robson,* 2 Nott & McCord, 507.

The whole statute must be looked to, and the intention as drawn therefrom must prevail over the literal import of its terms, and detached clauses and phrases. *Jeffersonville* v. *Weems,* 5 Ind., 547; *Storm* v. *Stevens,* 104 Ind., 46; *Smith* v. *Moore,* 90 Ind., 294–305.

Every statute should be construed so as to harmonize with the pre-existing body of law; antagonism between the act to be interpreted and the previous law, whether statutory or unwritten, is to be avoided, unless it is clearly the intention of the legislature that such antagonism should arise. Black on Interpretation of Law, sec. 32, p. 60, and cases cited. For further authority as to above rules of construction, see Potter's Dwarris on Statutes and Constitutions, pp. 144, 193, 197 and 202.

From these authorities it is clear:

1. That the whole plan of municipal government and the whole chapter on municipalities is to be considered in arriving at the meaning of the sections under construction, and that they must be construed so as to harmonize as nearly as possible with the former law and custom which gave to the people the right, at stated intervals, to directly select their officers. From this it is clear that no construction will be tolerated which gives to officers who have been repudiated at the polls a right, in the dying days of their official existence, to elect for the incoming term.

2. That the intent of the legislature is the pole star that guides the constructionist. Wherever that beacon lights his way he must follow, and the letter of the law must be made to yield to the plain and obvious intent of its makers.

3. No construction which would lead to an absurdity, or an

injustice to the voters of the town, will be adopted by the court.

Before leaving the subject we will call the court's attention to the fact that this controversy would not have arisen if the year 1900 had been a leap year. The closing year of a century—three out of four times—is not a leap year. Can this mere exigency of computing time, a thing that happens three times in four hundred years, increase the power and rights of a retiring board and diminish the prerogatives of the incoming one? Tuesday was the first day of January, 1895. Municipal elections were held in 1894, and the old boards in all the cities and towns of the state did not assume in 1895 to elect. Even in this year, 1901, the officers of all the municipalities in the state—Biloxi and Jackson excepted—have acted on the correct idea. We invoke contemporaneous construction. Sedgwich on Statutory and Constitutional Law, 212; *Chrisman* v. *Brookhaven*, 70 Miss., 477.

[For a synopsis of counsel's argument on the right of the mayor to vote, and then to cast an additional deciding vote, see brief in case of *Bousquet* v. *Gleason*, *ante* 478.]

*White & Harper*, for appellee.

Relator's election by the old board is undisputed, but the right of the old board to elect is controverted. Section 3030 of the code provides that a general election shall be held biennially on the second Tuesday in December, and further provides that the officers elect shall hold their offices for two years and until their successors are elected and qualified.

Section 2992 provides that at the first regular meeting of the mayor and board of aldermen succeeding each regular municipal election they shall elect a clerk and, in cities, a tax collector.

So it is seen at a glance that it was not only in the power, but it was the duty of the board, at their first regular meeting after the general election in December, 1900, to elect a clerk

and tax collector, and they had the power, if they chose so to do, to elect at that time a police justice, unless the court shall hold that the legislature said one thing and meant another when it provided that the election should be held at the first regular meeting after every general election. We take it that this court will not resolve itself into a legislature and change the law. It is not a question as to what the law ought to be, but what the law is. While it is true that in construing laws the legislative intent is to be sought, there is no room for construction in this statute. Its language is plain and unambiguous, and while the court, if it were vested with the functions of the legislature, might enact a different law upon this subject, and provide that the incoming and not the outgoing board should elect, and while the court may be of the opinion that the legislature would have enacted a different law if its attention had been called to the fact that once in seven years Tuesday is the first day in the year, and would have provided in those years for the election at some other meeting, yet it has not done it, and it is by no means certain that the legislature would change the present law if a bill for that purpose were introduced. It might be that they would regard the public interest as best subserved by an election at the regular time, and, as they would doubtless consider the public interest above everything else, it is not improbable that an effort to change the law would be defeated in that body.

"But it is needless to discuss the policy of the law, for it is only in the construction of statutes whose terms give rise to some ambiguity, or whose grammatical construction is doubtful, that courts can exercise the power of controlling the language in order to give effect to what they suppose to have been the real intention of the lawmakers. The court will not make the law reasonable, but will expound it as it stands, according to the real sense of the words." Endlich on Interpretation of Statutes, section 4.

"The clear language of a statute can neither be restrained

nor extended by any consideration of supposed wisdom or
policy.'' Endlich on Interpretation of Statutes, sections 5
and 6.

''In short, when the words admit of but one meaning, the
court is not at liberty to speculate on the intention of the leg-
islature or to construe an act according to its own notions of what
ought to have been enacted. . . . To depart from the
meaning on account of such views is, in truth, not to construe
the act, but to alter it. The business of the interpreter is not
to improve the statute, it is to expound it. While he must
seek for the intention of the legislature, that intention is not
to be ascertained at the expense of the clear meaning of the
words. The question is not what the legislature meant, but
what the language means.'' Endlich on Interpretation of
Statutes, section 7.

''To give a construction different from that which the words
import, or can possibly import, is not to interpret law, but to
make it. Every departure from the clear language of the stat-
ute is, in effect, an assumption of the legislative power by the
court.'' Endlich on Interpretation of Statutes, section 8.

''If the words are free from ambiguity and doubt, and ex-
press clearly and distinctly the sense of the framers of the in-
strument, there is no occasion to resort to other means of inter-
pretation. Courts cannot correct supposed errors, omissions
or defects in legislation, or vary by construction the contract
of parties. The object of interpretation is to bring sense out
of the words used, not to bring a sense into them.'' Black on
Interpretation of Statutes, 35, 36, 37, 38, 39, 40.

''If there is unwisdom in the statute, it is for the legislature
to remedy it. For the courts, the only rule is, '*ita lex scripta
est.*' '' Endlich on Interpretation of Statutes, p. 38; *Koch* v.
*Bridges*, 45 Miss., 247.

Argued orally by *E. J. Bowers* and *R. H. Thompson*, for
appellant, and by *W. A. White*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

In the case of *Bousquet* v. *State, ex rel. Gleason*, decided last Monday (*ante, p.* 478), we held that the mayor of a municipality which had accepted the provisions as to municipalities provided by the code of 1892, in the chapter on that subject, could not vote in an election for the officers provided for in §§ 3001 and 2992, except when there was a tie between the aldermen; that the mayor was not a member of the board of aldermen, and could not vote as an alderman to make a tie, and then as mayor to break it, thus voting twice.

In this case, adhering to that ruling, we are required to decide the further question whether the old board or the new board should elect the tax collector, since § 2992 provides that the tax collector shall hold his office for two years, and until his successor is qualified, and the successful litigant in this case would not, without such decision, know from what date his term of office began.

We are satisfied, after a careful and critical examination of the chapter on municipalities in the code of 1892, that the old board had no power to elect. Such power can only be derived from the most technical adherence to the very letter of §§ 2989 and 2992, looked at isolatedly, wholly disconnected from all of the other sections of that chapter relating to the matter. Such construction is manifestly opposed to the whole spirit and scope of said chapter. It would permit a board which had been defeated at an election, on the very issue of who the tax collector should be, to elect, when the first Tuesday of January came before the first Monday, that person tax collector who had been repudiated at the polls, where, as might occur, his selection was made a matter of preference and instruction by the voters.

The plain purpose of the code provisions was that the new board—the incoming administration—should choose the clerk, the tax collector and the police justice unembarrassed by any opposition on the part of the retiring board. The new admin-

istration is the one with which the new subordinate officers are to work, and is responsible to the people for making a wise selection. An inspection of the calendar shows that, beginning with 1892 and concluding with 1929, A.D., a period of thirty-eight years, there are only five instances in which the year succeeding a municipal election begins on Tuesday. There will occur in said period nineteen city elections, and in only five of these does the year following begin with Tuesday.

The legislature had in mind the general, not the exceptional; what would usually happen, to wit: that Tuesday would come after Monday, not what would be extraordinary, and happen only five times in nineteen elections or thirty-eight years. Some point was attempted to be made as to the disarrangement of the terms of office, their unequal length, on the construction we favor. But the same thing would apply as an objection in the matter of the term of governor, and besides, if fixed and permanent procedure is the object to be secured, how is that in anywise accomplished by upsetting five times in nineteen the regular course of procedure?

It has long ago been declared as settled law, universally approved and followed, that " a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers." *People* v. *Utica Insurance Co.*, 15 Johnson (N. Y.), 358-380.

This court has furnished some most striking illustrations of construing a statute according to its spirit when that is clearly against the mere letter. See, notably, *R. R. Co.* v. *Trotter*, 60 Miss., 442; *Ex parte Gore,* 57 Miss., 251, and *Bates* v. *Stokes*, 40 Miss., 56. Illustrations from other courts might be indefinitely-added. We laid down the true rule of construction in *Adams* v. *R. R. Co.*, 75 Miss., at page 285, which we re-announce, to wit: "A statute must receive such construction as will, if possible, make all its parts harmonize with each other,

and render them consistent with its scope and object. The entire statute must be so read that the whole may have a harmonious and consistent operation. In the construction of a statute the object is to get at its spirit and meaning, its design and scope; and that construction will be justified which evidently embraces the meaning and carries out the object of the law, although it is against the letter and the grammatical construction of the act. In determining the proper construction of a statute, the entire legislation on the subject-matter, its policy, reason, as well as the text, must be looked to.''

Again, contemporaneous construction by those whose duty it is to act under and administer a statute is often times materially helpful. This state of affairs existed in 1895, and yet no one ever pretended that the old board could elect, and so far as the records of this court disclose, the present is the only instance where such contention as appellants make has been advanced. It is also a fundamental rule of construction that courts will not give any statute such construction as would charge upon the legislature folly or absurdity. We can conceive nothing more foreign to the whole spirit and scope of this municipal legislation, which more directly affronts common sense, or which more inevitably imputes folly to the legislature, than the construction which would authorize a defeated board to fasten upon an incoming administration, and the taxpayers of a city, officers not chosen by the new board, and who might be actually hostile to it and unacceptable to the people who elected the new board. We know, of course, nothing about the officers here contending, and are speaking by way of argument merely to show how untenable is the opposite contention. In construing a statute, how it may operate, and not simply how in a single instance, it does operate, is to be considered. The ordinary operation, not the isolated instance, is material.

All sections relating to the organization of the new mayor and board of aldermen, and the election of their subordinate officers should be looked at as one whole, and collocated so as

to make the purpose of the legislature effective.    If sections 2989, 2992, 3001, and 3030 be properly collocated and looked at as one entire scheme, it is perfectly clear that the new board alone has the power.    Section 2989 simply provides that the regular meetings of the board shall be on the first Tuesday of each month; not that these officers shall be then elected.    These sections should be collocated in the following order, §§ 3030, 2992, 3001.    Section 3030 provides for the election and organization of the new board.    Section 2992, which should be read immediately after it, then provides that ''at the first regular meeting of the mayor and board of aldermen succeeding each regular election they shall elect,'' etc., manifestly meaning ''at the first regular meeting of the *new* mayor and board of aldermen ''—the one just elected and organized as provided in § 3030.    No other sensible construction can be given to the two sections thus collocated, and none other would probably occur to any mind were they so collocated.    It is perfectly permissible so to transpose and collocate them.    Section 2992 manifestly refers to the board provided for by § 3030, the new board.    Indeed, such transposition and collocation go far to place the power of the new board to elect within the letter as well as the spirit of the law, since § 2889 is merely a general direction as to when regular monthly meetings shall be held for any and all purposes every month, not having any special reference the election provided for in § 2992.    Counsel for appellee have yoked the wrong sections together, §§ 2889 and 2992, and, like Nelson at Copenhagen, shut their eyes on § 3030, and so have not seen the plain meaning of the law, to to be seen at a glance by yoking §§ 3030 and 2992 together, and reading them in this order.

We have given the case most careful consideration, as its importance demanded it should be done, and are clearly of the opinion that the new board alone has the power to elect the officers named in § 2992.    Relator was elected by the new board, and his term of office dates from that election.    The

views of the learned circuit judge are in conformity with these views and the judgment is

*Affirmed.*