ROSEBERRY *v.* NORSWORTHY, SHERIFF AND TAX COLLECTOR.*

(En Banc.  June 9, 1924.)

[100 So. 514.  No. 24346.]

1. STATUTES. *Controlling purpose in construction is to give effect to intention; intention of legislature deduced from whole and every part of statute taken together.*

   In the construction of statutes, the controlling purpose is to ascertain and give effect to the intention and purpose of the legislature, and this intention and purpose is to be deduced from the whole and every part of the statute taken together—from the words and context—and such a construction adopted as will best effectuate the intention of the lawgiver.

2. STATUTES. *Proviso not construed so as to nullify remaining provisions.*

   Where the intention and purpose of a legislative enactment is clear and unmistakable from a consideration of the whole act, a proviso found therein will not be given effect as written, when so to do would defeat the obvious legislative purpose and intent, nullify the other detailed provisions of the act, and reduce the act as a whole to an absurdity.

3. LICENSES. *Law levying annual privilege tax on motor driven vehicles construed.*

When all the provisions of chapter 116, Laws of 1924, levying an annual privilege tax on all classes of motor driven vehicles, are considered together, they indicate a clear and unmistakable legislative intention and purpose to fix the minimum tax imposed at ten dollars per annum, with a scale of taxation graduated from that minimum to the maximum therein fixed, and, when the act is considered as a whole, this legislative purpose and intent becomes so apparent as to lead to the irresistible conviction that the use of the word "maximum" in the proviso found in section 3 of the act is a mere clerical error, and, such being the case, the strict letter of this proviso must yield to the obvious intent.

4. STATUTES. *True meaning enforced, even to extent of correcting errors in language employed.*
The true meaning of statutes, when ascertained will be enforced by the court, even to the extent of correcting errors in the language used.

5. STATUTES. *When rule as to conflicting sections not applicable.*
The rule that, as between conflicting sections of the same act, the last in order of arrangement will control has no application, where the intention and purpose of the whole act is clear and unmistakable, and to accept the literal wording of the latter section would destroy the legislative policy, nullify the main provisions of the act, and entirely defeat the manifest intention and purpose of the law-makers.

6. STATUTES. *Law levying privilege tax on motor vehicles held not violative of constitutional provision as to titles.*
The fact that chapter 116, Laws of 1924, provides that the fees and taxes derived shall be paid into the county road fund, while the title of the act provides that such taxes shall be paid into the state highway fund and the county road fund, does not render said act violative of the provision of section 71 of the Constitution of 1890 that the title of an act "ought to indicate clearly the subject-matter or matters of the proposed legislation," since this provision is merely advisory or directory.

*Headnote 1. Statutes, 36 Cyc, pp. 1106, 1128; 2. Statutes, 36 Cyc, p. 1163 (1925 Anno); 3. Motor Vehicles, 28 Cyc, p. 31; 4. Statutes, 36 Cyc, pp. 1107, 1106; 5. Statutes, 36 Cyc, p. 1131; 6. Statutes, 38 Cyc, p 1044.

APPEAL from circuit court of Forrest county.
HON. R. S. HALL, Judge.

Mandamus by J. L. Roseberry against H. C. Nors-
worthy, sheriff and tax collector. From a judgment dis-
missing the petition, plaintiff appeals. Affirmed.

*Currie & Smith,* and *E. J. Currie, Jr.,* for appellant.

Mandamus was the proper remedy to be invoked. Code
of Miss. 1906, section 3231; Hemingway's Code, section
2533; *Thomas T. Swann* v. *Buck,* 40 Miss. 268; Cooley on
Taxation (4 Ed.), section 1606, pages, 3209, 3211, cit-
ing authorities. The Enrolled Act controls. *Green* v.
*Weller,* 32 Miss. 650; *Ex Parte Wren,* 63 Miss. 512; *Hunt*
v. *Wright,* 70 Miss. 303, 11 So. 608; *Nugent* v. *City of* ·
*Jackson,* 72 Miss. 1051, 18 So. 493; *State* v. *Powell,* 77
Miss. 566, 27 So. 927; *State* v. *Henry,* 40 So. 158; *Postal
Telegraph Co.* v. *Shannon,* 44 So. 809; *Adams* v. *Noble,*
**60** So. 561; *State, etc.* v. *Jackson,* 81 So. 1; 48 L. R. A.
652; 25 R. C. L. 884; 25 R. C. L. 895; 25 R. C. L. 947.

Its language here is clear, unambiguous and unmis-
takable and the physical construction of the whole sec-
tion of the act in question, and the arrangement of its
various parts, show conclusively that the last provision
of the section is a general provision which controls the
whole section and each and every part of it. We can
conceive of no argument to the contrary along this line.
Language could not be more explicit. The proviso stands
as an unanswerable argument in its own favor. It puts
a restriction upon every preceding part of the section.

As the matter now stands the legislature of the state
has spoken and has expressed itself in clear, concise,
unmistakable and unambiguous language, and to adopt
the theory of appellee would amount to calling upon the
courts to construe something that permits of no construc-
tion. The legislature, in its choice of words, was un-
restricted in the exercise of its privilege of making that
choice. It had before it the whole range of the English
language. In expressing its will and intent in the last
paragraph of the section of the act under discussion it

selected language that cannot be twisted nor misconstrued.

The law-making body of the state of Mississippi, by the exercise of its legislative power, has enacted a statute, under the terms of the controlling provision of which it says that the greatest amount that can be collected in any case is ten dollars per annum. We think to undertake to put any other construction on the language employed would amount to changing the law as enacted by the legislature and would in effect be judicial legislation, not judicial construction.

It is the duty of the courts to recognize, construe and enforce the laws as they are written, and to grant proper relief upon the application of any person interested. 36 Cyc. pages 1102-1103, section VII, subsection b.

The scope of judicial interpretation does not admit the right of reading other words into the law. It would be objectionable, and a species of legislative judicial action always to be avoided. 36 Cyc. 1103; *Walker* v. *Vicksburg, etc., R. Co.,* 110 La. 718, 34 So. 749; 36 Cyc. 1103; *Philadelphia Fire Ins. Co.* v. *Love,* 101 Texas, 376, 108 S. W. 158, 810; *Austin* v. *Cahill,* 99 Texas, 172, 187, 88 S. W. 542, 89 S. W. 552; *Gooden* v. *Lincoln Parish Police Jury,* 122 La. 755, 48 So. 196.

A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. 25 R. C. L., page 957, 958, section 213, citing numerous authorities; *Monaghan* v. *State,* 6 So. 241; *Siegel* v. *People,* 106 Ill. 89, and other authorities.

The courts must look to the statute itself for the legislative intent, and cannot make law by judicial construction. *Abbott* v. *State,* 63 So. 667. The judiciary will

never undertake to so construe a statute as to change the language used by the legislature when the same is expressed in plain, explicit and unambiguous words. *Walker* v. *Vicksburg, S. & P. Ry. Co.,* 34 So. 749; *State, etc.,* v. *Land,* 62 So. 31; *City of Hazlehurst* v. *Mayes,* 51 So. 890; *State* v. *Piazza,* 6 So. 316; *Hamner, et al.* v. *Yazoo Delta Lbr. Co.,* 56 So. 466; *State* v. *Traylor,* 56 So. 521; *State, etc.,* v. *Burr, et al.,* 84 So. 61; *City of Shreveport* v. *S. W. Gas, etc., Co.,* 74 So. 559; *Louisville, etc., R. Co.* v. *W. U. Tel. Co.,* 71 So. 118; *Fine* v. *Moran,* 77 So. 533; *Van Pelt* v. *Hilliard,* 78 So. 693; *State* v. *Amos,* 79 So. 433; *May* v. *Head,* 96 So. 869; *Tucker* v. *McLendon,* 98 So. 797; *State* v. *Reusswig,* 126 N. W. 279, 110 Minn. 473; *City of Covington* v. *Cin., etc., R. Co.,* 139 S. W. 854, 144 Ky. 646; *Martin* v. *Martin, etc.,* 27 App. D. C. 59, 7 Ann. Cas. 4; *Healy* v. *State,* 80 A. 1074, 115 Md. 377; *Mygatt* v. *Southern Coal, etc., Co.,* 180 Ill. App. 150; *United Missouri, etc., Co.* v. *Wisconsin, etc.,* 119 Pac. 796, 44 Mont. 343; *United States* v. *Shing Shunn & Co.,* 173 F. 844; 1 Cooley on Taxation (4 Ed.), sections 64, 66, and 72; Vol. 2, section 502.

All fundamental rules of law and reason preclude the courts from undertaking to construe the statutes or parts of statutes of the legislature by saying that the legislature intended to convey a meaning wholly different from the ordinary and only meaning that can be attributed to the words and language employed by the legislature. When the legislature expresses its intent in the wording of a statute or in the wording of the controlling portion of a statute nothing remains but for the courts to deter mine the import of the law by an examination of its plain and unequivocal terms, and to give effect to the law in conformity with such plain and unambiguous words and terms.

It is but reasonable to suppose that the necessary number of legislators refused to vote favorably upon the bill in question until it was so amended as to embody the very provision upon which the appellant relies. With-

out such amendment it is but reasonable to presume the bill would have failed of passage entirely. These suppositions and presumptions are conclusively determined in favor of the latter provision in the act and in favor of the contentions of the appellant.

The last expression of the legislative will is the law, in case of conflicting provisions in the same statute, or in different statutes, the last enacted in point of time prevails; and on the same principle, if both were enacted at the same time, the last in order of arrangement controls. 36 Cyc. 1130, section c, citing authorities; *State* v. *Burr,* 16 N. D. 581, 113 N. W. 705; *Swann* v. *Buck,* 40 Miss. 308.

The cases of *Ham* v. *The State, and Royston* v. *The State,* 7 Blackf. 314, presented the question of conflict between two statutes passed at the same session. The court said: "In determining which is the law of the land, we know of no other rule of construction than that the last expressed will of the legislature must prevail." See, also, *Johnson* v. *Byrd, Hemp.* (U. S.) 434 (Fed. Cas. No. 7,376.); *S. P. Gibbons, et al.* v. *D. E. Brittenum,* 56 Miss. 232; *George* v. *Woods, et al.,* 49 So. 147; *Davis* v. *State, ex rel. County Board of Equalization of Cherokee County,* 78 So. 313.

The strongest hope that appellee could entertain would be upon the theory that the section of the act in question, as a whole, is of doubtful import, and that the legislature intended to use language in the last provision of the section entirely different from the language which they in fact used. We are firmly convinced that any one of the propositions already before the court would render this position or any other that might be assumed by appellee untenable. The very advancement of the theory last named would, however, result in greater discomfiture for the appellee. It is a primary and fundamental rule of law that in the construction of doubtful statutes or parts of statutes that all doubts are to be resolved in favor of the taxpayer, the appellant in the instant case,

and that all presumptions are in his favor. *Vicksburg, etc., Co.* v. *The State,* 62 Miss. 105; *Wilby* v. *The State,* 47 So. 465; *Middleton* v. *Lincoln County,* 84 So. 907; *State, etc.,* v. *Grenada, etc.,* 85 So. 137; *Sperry, etc.,* v. *Harbison,* 86 So. 455; *Nolan* v. *Moore,* 88 So. 601; *Anderson* v. *City of Birmingham,* 88 So. 900; *Yarbrough, etc.,* v. *Phillips, etc.,* 96 So. 414; *State, etc.,* v. *Burchfield Bros.,* 99 So. 198; 2 Cooley on Taxation (4 Ed.), secs. 503, 1113-1119.

If the appellant is not entitled to the relief prayed for in his petition, then he cannot be required to pay any amount whatsoever under the terms and language of the act, in that said act is unconstitutional when viewed in the light of sections 59 and 71 of the Constitution.

It is evident that there is a material variance between the statements contained in the title and those contained in the body of the bill. The title is wholly misleading.

*E. C. Sharp,* Assistant Attorney-General, for the state.

The courts will not go behind the enrolled bill. *Green* v. *Weller,* 32 Miss. 650; *Ex Parte Wren,* 63 Miss. 512; *Hunt* v. *Wright,* 70 Miss. 302; *Mayor & Board of Aldermen* v. *Jackson,* 102 Miss. 663; *Collins ex rel.* v. *Jackson,* 119 Miss. 725. This wise rule, having been followed so consistently by our court, we feel unwarranted in asking the court to depart therefrom.

But it is the duty of the court to construe the statute according to the legislative intent, and, if necessary in order to carry out the legislative intent, to eliminate, add to, or change a word or words of the enrolled bill. 2 Lewis' Sutherland Statutory Construction (2 Ed.), pp. 795, 796, 797. In *Palms et al.,* v. *Shawano Co. et al.,* 61 Wis. 211, the word "north" was substituted for the word "south," used through a clerical error in a law enacted by the legislature of Wisconsin.

In *Bird* v. *Board of Commissioners,* 95 Ky. 195, the word "depth" was substituted by the court for the word

"width," appearing in the enrolled bill. The rule was followed in *Commonwealth* v. *Herald Publishing Company*, 128 Ky. 424, 16 Am. Eng. Annotated Cases, 761; *Sams* v. *Sams*, 85 Ky. 396. The same rule of construction has been, with one or two exceptions, consistently followed by this court. *Earhart* v. *State*, 67 Miss. 325; *Ott* v. *Lowery*, 78 Miss. 487; *Adams* v. *Railroad Company*, 75 Miss. 285.

In *State* v. *Traylor*, 100 Miss. 544, by a divided court, this rule was departed from, but see able dissenting opinion, by Judge Smith. *State* v. *Traylor, supra,* was overruled in *State* v. *Ware*, 102 Miss. 634. See, also, *Holly Springs* v. *Marshall County*, 104 Miss. 76; *Kennington* v. *Hemingway*, 101 Miss. 259; *Gunter* v. *City of Jackson*, 130 Miss. 637.

In *Adams County* v. *Diocese of Natchez*, 110 Miss. 890, the court held that: "In order to obtain the policy and intent of the statute, the disjunctive 'or' should be used and read into the act in the place of the conjunctive 'and.'

In the case at bar, to construe the second paragraph of section 3 as it appears in the enrolled bill, would be to absolutely destroy all other provisions of the act, and to judicially determine that the enactment was a piece of legislative folly.

Another question here presented is whether or not the title to said act is so misleading or so contradictory of section 8 thereof, as to be violative of sections 60 and 71, of the Constitution. This court has held that what the title ought to contain is directory and largely, if not wholly, within the discretion of the legislature. 2 Lewis' Sutherland Statutory Construction, 648, 649 and 650. Lewis' Sutherland Statutory Construction, 184, 185; 1 Lewis' Sutherland Statutory Construction, 201-202; *Levee Commissioners* v. *Insurance Company*, 96 Miss. 832; *Mayor* v. *The State*, 102 Miss. 663; *State* v. *Phillips*, 109 Miss. 22, 67 So. 651.

It therefore appears that this court, has in a majority of the cases declined to interfere with the discretion of the legislature as to what the title ought to contain.

Argued orally by *E. J. Currie* for appellant, and *E. C. Sharp,* Assistant Attorney-General, for the state.

COOK, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Forrest county dismissing a petition for mandamus to compel the sheriff and tax collector of said county to issue to the appellant, J. L. Roseberry, a privilege license for a two-ton motor truck for a consideration of ten dollars, which had been tendered to the said tax collector in payment for such license, and by him refused.

The legislature at its 1924 session passed an act (chapter 116, House Bill No. 755) entitled:

"An act to amend chapter 120 of the Laws of 1920 as amended by chapter 133, Laws of 1922, so as to equalize the registration fees and privilege taxes on motor vehicles and motor cycles for using the public roads and streets, to regulate the use of tags, and to provide for the payment of the fees and taxes derived, into the state highway fund, and the county road fund."

After providing a detailed schedule of taxes for every kind of motor vehicle, the act, as it appears in the enrolled bill, contains the proviso "that in all cases the maximum tax for all automobiles, trucks, trailers, and semi-trailers shall be ten dollars per annum," and it was in virtue of this proviso that the appellant sought to compel the issuance to him of an annual license upon the payment of the sum of ten dollars.

Sections 2 and 3 of the act (chapter 116, Laws of 1924) read as follows:

"Sec. 2. There is hereby levied the following annual privilege taxes for the privilege of using the public roads or streets:

"1. On each motor vehicle propelled by electricity ...................................$15.00

"2. On each commercial motor vehicle:

"(a) On each motor truck equipped with pneumatic tires the following shall be charged:

For school trucks, used exclusively
as such......................... $ 10 00 per annum

For one ton or less carrying capacity ....................... 10 00 per annum

For one and one-half tons carrying
capacity .................... 20 00 per annum

For two tons carrying capacity.... 40 00 per annum

For two and one-half tons carrying
capacity .................... 50 00 per annum

For three tons carrying capacity... 82 50 per annum

For three and one-half tons carrying
capacity .................... 112 50 per annum

For four tons carrying capacity... 172 50 per annum

For four and one-half tons carrying
capacity .................... 225 00 per annum

For five tons carrying capacity.... 300 00 per annum

For six tons carrying capacity..... 400 00 per annum

"On each motor truck equipped with two or more cushions, or semi-pneumatic tires which have a resiliency that is more than fifty per cent. of the resiliency of pneumatic tires, the rate shall be one and one-fourth times the above schedule: Provided, this increased rate shall not apply on trucks of one ton or less carrying capacity:

"Provided that it shall be unlawful to operate any truck of more than six (6) tons carrying capacity on any road, bridge or highway in the state.

"On each motor truck equipped with two or more solid tires the rate shall be one and one-half times the above schedule; provided this increased rate shall not apply on trucks of one and one-half tons, or less, carrying capacity.

"(b) On each trailer and each semi-trailer the tax shall be in accordance with the following schedule:

For two tons carrying capacity or
  less .......................... $15 00 per annum
For three tons carrying capacity....  25 00 per annum
For four tons carrying capacity....  40 00 per annum
For five tons carrying capacity......  50 00 per annum

"(c) On each motor vehicle weighing over two thousand five hundred pounds and used for the transportation or delivery of persons for hire, in addition to the tax herein provided, there shall be paid in each county in which such motor vehicle operates three miles or more, four dollars for each passenger carrying capacity.

"On each motor vehicle, whether domiciled in the state or not, which is used for the transportation or delivery of persons, for hire, on the public highways in any county in the state, and on which has not been paid all of the taxes as required elsewhere in this section, there is hereby levied a mileage tax on each such motor vehicle, to be paid in each county in which such vehicle operates oftener than once every two weeks, to be paid as follows:
For each passenger carrying capacity, for
  each mile of distance traveled.........$1 00 per mile

"(d) On each commercial motor vehicle used for the transportation of freight and property, for hire, the rate shall be one and one-half times the amount herein specified for trucks.

"On each commercial motor vehicle whether domiciled in this state or not, used for the transportation or delivery of freight or property for hire, on the public highways in any county in the state, on which has not been paid all of the taxes as required elsewhere in this section, there is hereby levied a mileage tax on each such vehicle to be paid in each county, in which such vehicle operates oftener than once every two weeks, to be paid as follows:
For each one-half ton carrying capacity,
  for each mile of distance traveled ....$1 00 per mile

"The actual weight of the load continually hauled, and not the rated capacity of the vehicle, shall be considered as the basis of the collection of additional taxes under

this paragraph by the sheriff and tax collector in the several counties.

"3. On each motor vehicle used for the transportation of persons, there shall be charged a tax of ten cents per horse power generated by the motor propelling such vehicle, and forty cents per hundred pounds based on the gross weight of the vehicle:

"Provided, that in all cases the maximum tax for all automobiles, trucks, trailers and semi-trailers shall be ten dollars per annum."

The contention of the appellant is that, since the enrolled act imports absolute verity, the language of the proviso as it appears therein must control and strike down the provisions of sections 2 and 3 of the act which are in conflict therewith, since the language of the proviso is clear and unambiguous, and since the proviso is last in order of arrangement, and consequently destroys the preceding clauses of the same statute with which it is in conflict. The appellee contends that the use of the word "maximum" in this proviso is a manifest clerical error, and that it is perfectly clear from the whole act that the word "minimum" was intended instead of the word "maximum," and that to construe the entire act in consonance with the literal wording of this proviso would absolutely destroy all other provisions of sections 2 and 3 of the act, defeat the manifest legislative intent and policy lead to an absurdity, and be a judicial determination that the entire enactment was a piece of legislative folly.

It has been held by this court in a long line of cases, beginning with *Green* v. *Weller,* 32 Miss. 650, that the courts will not look to the journals of the two houses of the legislature to ascertain the true facts, but that the enrolled acts of the legislature, when signed by the speaker of the House of Representatives and president of the Senate, and approved by the Governor, and deposited in the office of the secretary of state, are records which import absolute verity, and are conclusive evidence of the due enactment of the statutes contained in them,

and cannot be impeached in any manner whatever.   We must therefore look to the enrolled act alone to determine the intent and purpose of the legislature.

It is a fundamental rule of statutory construction of universal application that the controlling purpose is to ascertain and give effect to the intention and purpose of the legislature.   This intention and purpose is to be deduced from the whole and every part of the statute taken together—from the words and context—and such a construction adopted as will best effectuate the intention of the lawgiver.  *Green* v. *Weller*, 32 Miss. 650.

Lewis' Sutherland, Statutory Construction (2 Ed.), sections 410, 411, in discussing the effect of mistakes in legislative enactments, and the right of the courts, to give effect to the obvious intent of the legislature, announced the following rules:

"Legislative enactments are not any more than other writings to be defeated on account of mistakes, errors, or omissions, provided the intention of the legislature can be collected from the whole statute; . . . Where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied.  This is but making the strict letter of the statute yield to the obvious intent. . . . Where the provisions of a law are inconsistent and contradictory to each other, or the literal construction of a single section would conflict with every other following or preceding it, and with the entire scope and manifest intent of the act, it is certainly the duty of the courts, if it be possible, to harmonize the various provisions with each other; and to effect this it may be necessary, and is admissible, to depart from the literal construction of one or more sections," but, "to enable the court to insert in a statute omitted words or read it in different words from those found in it, the intent thus to have it read must be plainly deducible from other parts of the statute."

When the act here involved is considered as a whole, there cannot be the slightest doubt as to the intention and purpose of the legislature, neither can there be the slightest doubt that the use of the word "maximum" in the proviso is a mere clerical error. The act prescribes a detailed schedule of annual privilege taxes for all kinds of motor driven vehicles. The tax on all school trucks, used exclusively as such, is fixed absolutely at ten dollars per annum. On each motor truck equipped with pneumatic tires there is fixed a schedule, according to carrying capacity, graduated from a minimum of ten dollars on trucks of a capacity of one ton or less to a maximum of four hundred dollars per annum on trucks of six-ton capacity. On motor trucks equipped with two or more cushions, or semipneumatic tires with certain degrees of resiliency, the minimum tax is fixed at twelve dollars and fifty cents for those of one ton or less capacity, with a maximum of five hundred dollars for trucks of six-ton carrying capacity. On trucks equipped with two or more solid tires the tax is fixed at a minimum of sixty dollars on those with a carrying capacity of two tons, and this is graduated up to a maximum of six hundred dollars on six-ton trucks. On each trailer or semitrailer of two tons carrying capacity or less a minimum tax of fifteen per annum is fixed, and this is graduated up to fifty dollars for five-ton trailers. There are various other provisions levying a tax on passenger vehicles, and vehicles of unusual weight, and those operated for hire in more than one county, and, while it may be possible that some of these provisions might, in some cases, yield a tax of less than ten dollars, per annum, such would rarely happen, and all the many provisions of the act except the proviso, indicate a clear and unmistakable legislative intention and purpose to fix the minimum tax at ten dollars per annum, with a scale of taxation graduated from that minimum to a maximum of six hundred dollars. If effect shall be given to the words of the proviso as written, this legislative purpose and intent will be defeated, all the other de-

tailed provisions of the act will be nullified, and the act as a whole becomes an absurdity.  When the act before us is considered as a whole, the legislative intent and purpose becomes so apparent as to lead to the irresistible conviction that the use of the word "maximum" in this proviso, instead of the word "minimum," is a mere clerical error, and, such being the case, the strict letter of the statute should yield to the obvious intent, and it is the duty of the court to effectuate this obvious intention and purpose, even to the extent of correcting this manifest error in the language used.  In so doing we are not without authority in our own court.  In the case of *Earhart* v. *State,* 67 Miss. 325, 7 So. 347, this court said:

"We must hold either that the legislature, in amending section 2985 of the Code by an act approved March 9, 1888, nullified the section, by making it senseless and uncertain, so as to be unenforceable, or that it committed a clerical mistake in striking out two words more than was intended, viz., the words 'an attack.'  The latter is the more probable, and to read the section as amended, retaining those two words will accomplish what was manifestly the legislative purpose, and leave the law in force. We therefore adopt that view."

In the case of *Adams* v. *Railroad Co.,* 75 Miss. 275, 22 So. 824, the court announced the following rule:

"In the construction of a statute the object is to get at its spirit and meaning, its design and scope; and that construction will be justified which evidently embraces the meaning and carries out the object of the law, although it be against the letter and the grammatical construction of the act.  .  .  .  In determining the proper construction of a statute, the entire legislation on the same subject-matter, its policy and reason, as well as the text of the particular act, must be looked to."

In the case of *Ott* v. *Lowery,* 78 Miss. 487, 29 So. 520, Chief Justice Whitfield used the following language:

"It has long ago been declared as settled law, universally approved and followed, that 'a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers.' . . .

"This court has furnished some most striking illustrations of construing a statute according to its spirit when that is clearly against the mere letter. . . . Illustrations from other courts might be indefinitely added."

In the case of *State* v. *Traylor,* 100 Miss. 544, 56 So. 521, by a divided court, the rule announced in the foregoing cases was departed from, but in the case of *State* v. *Ware,* 102 Miss. 634, 59 So. 854, the Traylor case was in effect overruled, and the court there approved and adopted the language of Justice Smith in his dissenting opinion in the Traylor case, as follows:

"Criminal statutes must be strictly construed, and the courts have no power to add to or take from them, or, for that matter, to add to or take from any other statute; but this does not mean that such statutes are to be construed with such technical strictness as to defeat the purpose of ascertaining the true meaning thereof. The rule is universal, so far as I am aware, that the true meaning of statutes, when ascertained, will be enforced by the courts, even to the extent of correcting errors in the language in which they are couched."

The rule invoked by the appellant that, as between conflicting sections of the same act, the last in order of arrangement will control, has no application, where the intention and purpose of the whole act is clear and unmistakable, and to accept the literal wording of the latter provision would destroy a legislative policy, nullify the main provisions of the act, and entirely defeat the manifest intention and purpose of the lawmakers.

The appellant next contends that the act in question is unconstitutional, in that the title thereof fails to clearly indicate the subject-matter or matters of the proposed legislation.   The title of the act provides for the payment of the fees and taxes derived into the state highway fund and the county road fund, while the act itself provides that all such taxes shall be paid into the county road fund, and it is the contention of the appellant that this title is misleading as to a material provision of the act, and consequently the act is more directly in conflict with section 71 of the Constitution of 1890 than it would be if it had no title at all.

Section 71 of the Constitution of 1890 provides, in part, as follows:

"Every bill introduced into the legislature shall have a title, and the title ought to indicate clearly the subject matter or matters of the proposed legislation."

It has been held by this court that this constitutional provision that "every bill  .  .  .   shall have a title" is mandatory, while the provision that the title "ought to indicate clearly the subject-matter of the proposed legislation" is only admonitory or advisory.   In the case of the *City of Jackson* v. *State,* 102 Miss. 663, 59 So. 873, Ann. Cas. 1915A, 1213, in discussing the effect of the word "ought" in this provision, in connection with the holding of the court in the case of *Levee Commissioners* v. *Insurance Co.,* 96 Miss. 832, 51 So. 2, the court used the following language:

"We think an examination of this case will show that the act there discussed had no title at all, but if it may be construed to hold that the courts are empowered to nullify acts of the legislature because, in the opinion of the court, the title does not indicate all it should indicate, we decline to follow it.   The unwisdom of this rule is demonstrated by the criticisms of the title of the act, the subject of this litigation.   The court was entirely warranted in holding that the act reviewed in *Levee Commissioners* v. *Insurance Co., supra,* had no title at all.

There are many reasons to assume that the framers of the Constitution intended, by the use of this word, to make impossible in this• state that character of litigation so common in some other states, as to almost create a judicial scandal. Being mindful of the fact that the legislature could be trusted to do some things without the advice, aid, or restraint of the courts, the wise men who wrote the Constitution of 1890, after saying what ought to be done, left the sufficiency of title to the department commissioned to write the statute laws of the state.''

The case of *City of Jackson* v. *State, supra,* was cited with approval and followed in the case of *State* v. *Phillips,* 109 Miss. 22, 67 So. 651, L. R. A. 1915D, 530, and we think these cases are decisive of the question now presented, and that the act is not violative of the provisions of section 71 of the Constitution.

The judgment of the court below will therefore be affirmed.

*Affirmed.*